1  STEVEN M. NATHAN, SBN 153250
2  HAUSFELD LLP
   33 WHITEHALL STREET
3  FOURTEENTH FLOOR
4  NEW YORK, NY 10004
   TELEPHONE: (646) 357-1100
5  SNATHAN@HAUSFELD.COM
6
7  COUNSEL FOR PLAINTIFF
8
9           IN THE UNITED STATES DISTRICT COURT
10        FOR THE SOUTHERN DISTRICT OF CALIFORNIA
                SAN DIEGO DIVISION
11

| | |
|---|---|
| 12 INDIA PRICE, *individually and on* 13 *behalf of all others similarly situated*, 14     Plaintiffs, 15 16 v. 17 18 CARNIVAL CORPORATION, 19     Defendant. 20 | Case No. 3:23-cv-00236-GPC-MSB **PLAINTIFFS' OPPOSITION TO DEFENDANT CARNIVAL CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** Judge: Hon. Gonzalo P. Curiel Courtroom: 2D Hearing: January 12, 2024, 1:30 p.m. |

21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ........................................................................... 2

III.  LEGAL STANDARD .................................................................................. 4

IV.   ARGUMENT ............................................................................................... 5

  A.  Plaintiffs Sufficiently Plead Wiretapping Claims ................................. 5

    1.  Carnival Acted Without Consent ...................................................... 5

    2.  Carnival Intercepted Plaintiffs' Website Communications ............. 8

    3.  Carnival Accessed the "Contents" of Website Communications ... 10

    4.  The Session Replay Code is a "Device" ......................................... 12

    5.  No "Party Exception" Applies ........................................................ 14

  B.  Plaintiffs Sufficiently Plead Invasion of Privacy Claims .................... 17

  C.  Plaintiffs Sufficiently Plead Computer Fraud and Abuse Act Claims .............. 20

    1.  Carnival Exceeded Its Authorized Access to Plaintiffs' Computers ........... 21

    2.  Carnival Caused Losses Exceeding $5,000 and Created a Threat to Public Safety ......................................................................................... 22

V.    CONCLUSION .......................................................................................... 25

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

3:23-CV-00236-GPC-MSB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
  69 F.3d 381 (9th Cir. 1995) ...................................................................... 4

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) .................................................................. 11

*Be In, Inc. v. Google Inc.*,
  No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................... 4, 5, 11

*Boyd v. Nationwide Mut. Ins. Co.*,
  208 F.3d 406 (2d Cir. 2000) .................................................................. 5

*Briddell v. State*,
  2016 WL 4698158 (Md. Ct. Spec. App. 2016) ............................................ 6

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020)..................................................... 10

*Burger v. Blair Med. Assocs., Inc.*,
  600 Pa. 194 (2009)............................................................................... 18

*Byars v. Goodyear*,
  654 F. Supp. 3d 1020 (C.D. Cal. 2023) .................................................... 16

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014)........................................................ 4

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015)........................................... 9, 10, 12

*Colo. Republican Comm. v. Doe*,
  Civ. A. No. 16-cv-01058, 2016 WL 3922156 (D. Colo. July 21,
  2016) .................................................................................... 24, 25

*Commonwealth v. Byrd*,
   235 A.3d 311 (Pa. 2020) ........................................................................... 6

*Commonwealth v. Cruttenden*,
   58 A.3d 95 (Pa. 2012) ............................................................................... 6

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ................................................................... 11

*Diaz v. D.L. Recovery Corp.*,
   486 F. Supp. 2d 474 (E.D. Pa. 2007) ...................................................... 18

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ..................................................................................... 4

*In re Facebook, Inc. Tracking Litigation*,
   956 F.3d 589 (9th Cir. 2020) ............................................................*passim*

*Fraser v. Nationwide Mut. Ins. Co.*,
   352 F.3d 107 (3d Cir. 2003), *as amended* (Jan. 20, 2004) ...................... 9

*Gamble v. Fradkin & Weber, P.A.*,
   846 F. Supp. 2d 377 (D. Md. 2012) ........................................................ 18

*Gilday v. Dubois*,
   124 F.3d 277 (1st Cir. 1997) .................................................................... 14

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................... 20

*In re Google Assistant Priv. Litig.*,
   546 F. Supp. 3d 945 (N.D. Cal. 2021) ..................................................... 20

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
   934 F.3d 316 (3d Cir. 2019) ...................................................................... 6

*Hayden v. Retail Equation, Inc.*,
   2022 WL 2254461 (C.D. Cal. 2022) ........................................................ 18

*Hines v. Overstock.com, Inc.*,
   668 F. Supp. 2d 362 (E.D.N.Y. 2009) ....................................................... 7

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ................................................................... 4

iv

*James v. Walt Disney Company*,
No. 23-cv-02500-EMC, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ................ 13

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ........................... 15, 16

*Joffe v. Google*,
746 F.3d 920 (9th Cir. 2013) .................................................................. 17

*Kittay v. Kornstein*,
230 F.3d 531 (2d Cir. 2000) ..................................................................... 5

*Klumb v. Goan*,
884 F. Supp. 2d 644 (E.D. Tenn. 2012) ................................................... 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .................................................................... 9

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .................................................................... 4

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ............................................................. 7

*Lopez Reyes v. Kenosian & Miele, LLP*,
525 F. Supp. 2d 1158 (N.D. Cal. 2007) .................................................. 17

*Lopez v. Terra's Kitchen, LLC*,
331 F. Supp. 3d 1092 (S.D. Cal. 2018) ..................................................... 7

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .................................................................. 12

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018) .................................................................. 8

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .................................................. 19

*Microsoft Corp. v. Does 1-18*,
No. 1:13-cv-139, 2014 WL 1338677 (E.D. Va. Apr. 2, 2014) ........................ 6

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .................................................................. 7

v

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007) ...................................................................... 5

*People v. Palacios*,
   41 Cal.4th 720 (Cal. 2007) ...................................................................... 17

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003) ........................................................................ 13

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
   884 F.3d 812 (9th Cir. 2018) ................................................................... 15

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ...................................................................... 7

*Rene v. G.F. Fishers, Inc.*,
   817 F. Supp. 2d 1090 (S.D. Ind. 2011) .................................................. 12

*Revitch v. New Moosejaw, LLC*,
   No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........... 14, 19

*Ribas v. Clark*,
   696 P.2d 637 (Cal. 1985) ............................................................. 14, 15, 16

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................... 11

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010) ...................................................................... 5

*Seal v. State*,
   133 A.3d 1162 (Md. 2016) ....................................................................... 14

*Shefts v. Petrakis*,
   2012 WL 4049484 (C.D. Ill. 2012) ......................................................... 13

*Sheridan v. NGK Metals Corp.*,
   609 F.3d 239 (3d Cir. 2010) ...................................................................... 5

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*,
   119 F. Supp. 2d 1121 (W.D. Wash. 2000) ............................................. 24

*Smith v. LoanMe, Inc.*,
   11 Cal. 5th 183 (Cal. 2021) ..................................................................... 16

vi

*Smith v. Marsh,*
194 F.3d 1045 (9th Cir. 1999) ................................................................. 18

*SolarCity Corp. v. Pure Solar Co.,*
No. CV16-01814-BRO, 2016 WL 11019989 (C.D. Cal. Dec. 27,
2016) ........................................................................................................ 24

*Soo Park v. Thompson,*
851 F.3d 910 (9th Cir. 2017) .................................................................. 11

*Steve Jackson Games, Inc. v. U.S. Secret Serv.,*
36 F.3d 457 (5th Cir. 1994) ...................................................................... 9

*Sw. Airlines Co. v. BoardFirst, LLC,*
No. 3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) .................... 7

*Tanner v. Acushnet Company,*
No. 8:23-cv-00346-HDV-ADSx, 2023 WL 8152104 (C.D. Cal. Nov.
20, 2023) ............................................................................................ 16, 19

*In re Toys R Us, Inc., Priv. Litig.,*
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ........................... 23

*U.S. Commodity Futures Trading Commission v. Monex Credit
Company,*
931 F.3d 966 (9th Cir. 2019) .................................................................... 8

*United States v. Barrington,*
648 F.3d 1178 (11th Cir. 2011) ................................................................ 13

*United States v. Hutchins,*
361 F. Supp. 3d 779 (E.D. Wis. 2019) ...................................................... 12

*United States v. Steiger,*
318 F.3d 1039 (11th Cir. 2003) .................................................................. 9

*Van Buren v. United States,*
141 S. Ct. 1648 (2021) ............................................................ 21, 22, 23, 24

*Van Tassell v. United Mktg. Grp., LLC,*
795 F. Supp. 2d 770 (N.D. Ill. 2011) ......................................................... 7

*Vaquero Energy, Inc. v. Herda,*
No. 1:15-CV-0967-JLT, 2015 WL 5173535 (E.D. Cal. Sept. 3, 2015) ................. 25

*In re Vizio, Inc., Consumer Priv. Litig.*,
2017 WL 11420284 (C.D. Cal. July 25, 2017) .......................................... 10

*In re: Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..................................................... 20

*Welter v. Med. Pro. Mut. Ins. Co.*,
No. 22-CV-11047-PBS, 2023 WL 2988627 (D. Mass. Feb. 23, 2023) ................. 14

*Wesley College v. Pitts*,
974 F. Supp. 375 (D. Del. 1997), *summarily aff'd*, 172 F.3d 861 (3d
Cir. 1998) ............................................................................................. 9, 10

*Wofse v. Horn*,
523 F. Supp. 3d 122 (D. Mass. 2021) ........................................................ 18

*Wolfson v. Lewis*,
924 F. Supp. 1413 (E.D. Pa. 1996) ........................................................... 18

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ......................................................... 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...................................................... 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ............................................................. 10, 11

**Statutes**

18 Pa. C.S. § 5702 ....................................................................................... 12

18 U.S.C. § 1030 ............................................................................... 21, 22, 24

18 U.S.C. § 2510 .................................................................................... 11, 12

Cal. Penal Code § 630 *et seq.* ..................................................................... 16

Mass. Gen. Laws Ann. ch. 272, § 99(B) ................................................... 10, 12

Mass. Gen. Laws ch. 214, § 1B .................................................................... 18

Md. Code Ann., Cts. & Jud. Proc. § 10-401(10) ............................................. 12

Md. Code, Cts. & Jud. Proc. § 10-402(c)(2)-(3) ............................................. 15

viii

**Other Authorities**

Restatement (Second) of Torts § 652B (1977)............................................................18

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
3:23-CV-00236-GPC-MSB

## I. __INTRODUCTION__

Plaintiffs India Price, Erica Mikulsky, Marilyn Hernandez, Ariel Oliver, and Daniel Rubridge ("Plaintiffs") bring claims, individually and on behalf of all others similarly situated, against Defendant Carnival Corporation ("Carnival" or "Defendant") for depriving Plaintiffs and Class members of the right to control how their personal information and communications are received, used, and disseminated. Carnival's highly interactive website deliberately and surreptitiously gathers sensitive personal information from every website visitor through hidden software code ("Session Replay Code") that Carnival procures from third parties ("Session Replay Providers") and embeds in its website.

The Session Replay Code procured and implemented by Carnival collects troves of personally identifiable and sensitive information from website visitors, without their knowledge or consent. Every action a website visitor takes while visiting the Carnival website—including mouse movements, clicks, scrolls, keystrokes, and sensitive personal information typed into text fields on the website ("Website Communications")—is surreptitiously intercepted, recorded, and instantaneously disclosed to the Session Replay Providers. Here, the intercepted Website Communications included information related to, *inter alia*, Plaintiffs' locations, intent to travel, dates of travel, travel locations, and other personal data requested by Carnival to book travel plans, such as passport numbers, driver's license numbers, dates of birth, home addresses, phone numbers, email addresses and/or payment information.

Plaintiffs plausibly allege that Carnival's conduct is highly intrusive and exposes Plaintiffs and Class members to extensive privacy risks in violation of state statutory and common law. While the specific nature of the intercepted content is not relevant to the claims asserted, the highly personal and sensitive nature of this information is all the more problematic. Nevertheless, the wrongful acts which establish viable claims

1  here are Carnival's procurement and use of Session Replay Code to secretly intercept
2  website visitors' private communications and sensitive personal information.

3         As detailed in Plaintiffs' First Amended Consolidated Class Action Complaint
4  (ECF No. 22) ("FAC"), Carnival's secret procurement of Session Replay Providers to
5  embed Session Replay Code on the Carnival website results in the electronic equivalent
6  of looking over the shoulder of (and recording) each visitor to the website for the
7  duration of their website visit, without their knowledge or consent. Carnival's conduct
8  violates state statutory and common law. As a result, Carnival is liable to Plaintiffs,
9  and all other similarly situated persons, for damages and injunctive relief. For the
10 reasons detailed below, Plaintiffs respectfully request this Court deny Carnival's
11 motion to dismiss in its entirety.

12 **II.    <u>STATEMENT OF FACTS</u>**

13        Plaintiffs brought this class action on behalf of themselves and a proposed
14 Nationwide Class and State Subclasses, all of whom Carnival surreptitiously recorded
15 while they visited Carnival's website. FAC ¶ 1. Carnival procures and directs third-
16 party vendors, such as Microsoft Corporation, to embed snippets of JavaScript
17 computer code ("Session Replay Code") on Carnival's website. *Id.* This code is then
18 deployed on each website visitor's internet browser for the purpose of secretly
19 intercepting and recording the website visitor's electronic communications with the
20 Carnival website. *Id.* Unlike other online advertising tools, Session Replay Code allows
21 a website to capture and record nearly every action a website visitor takes while visiting
22 the website, including action that reveals the visitor's personal or private sensitive data,
23 even when the visitor does not intend to submit the data to the website operator, or has
24 not finished submitting the data to the website operator. *Id.* ¶ 29. The events and data
25 captured by Session Replay Code includes all mouse movements, clicks, scrolls,
26 zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's
27 navigation and interaction through the website. *Id.* ¶ 31. Furthermore, Session Replay
28

Code does not necessarily anonymize user sessions. *Id.* ¶ 37. Identifying information will become known and visible to the Session Replay Provider and website owner, and Session Replay Providers create fingerprints that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information, which is then used to back-reference all of that user's web browsing across other previously visited websites. *Id.* ¶¶ 38, 41-42.

Carnival admits that it uses Microsoft Clarity, a Session Replay Code tool which comprises snippets of computer code used "to track mouse clicks and movements, scrolls, forms, and other interactions on its website." MTD[1] at 3. Carnival further concedes that the Session Replay Code uses website visitors' data in making a video showing users' individual interactions with the website. *Id.* Plaintiffs visited Carnival's website and, like other visitors, had their activity surreptitiously recorded and their privacy violated. FAC ¶¶ 5-10. At all relevant times, Carnival knew that it would collect information from Plaintiffs and other U.S. residents, including those from California, Maryland, Massachusetts, and Pennsylvania, while they browsed or interacted with www.carnival.com. *Id.* ¶¶ 12, 71. This means that Carnival is continuously made aware that its website is being visited by people located in California, Maryland, Massachusetts, Pennsylvania, and nationwide, and that website visitors, such as Plaintiffs, are being wiretapped in violation of state and federal statutory and common law. *Id.* ¶ 101.

After intercepting and capturing Plaintiffs' Website Communications, Carnival and the Session Replay Providers use those Website Communications to recreate website visitors' entire visit to www.carnival.com, create a video replay of the user's behavior, analyze that behavior, and, as Plaintiffs allege, use that information for

---

[1] Citations to "MTD" herein refer to Defendant's Brief in Support of the Motion to Dismiss First Amended Complaint (ECF No. 23).

marketing and sales.[2] *Id.* ¶¶ 2, 19. Carnival's secret deployment of the Session Replay Code results in the electronic equivalent of "looking over the shoulder" of each visitor to Carnival's website for the entire duration of their website interaction. *Id.* ¶ 2. This wiretapping by Session Replay Code starts the instant a user navigates to www.carnival.com, is ongoing and continues to present legitimate harm to website visitors, all while Carnival benefits from the consumer data to shape products, solutions, and the buyer experience—which increases Carnival's ability to generate profits. *Id.* ¶¶ 18-20, 56, 130. Carnival's conduct violates the federal Wiretap Act, 18 U.S.C. § 2510, *et seq.* ("Wiretap Act"); the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA"); the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* ("CIPA"); and violates multiple state laws in California, Maryland, Massachusetts, and Pennsylvania. *Id.* ¶ 3. Likewise, these facts establish personal jurisdiction over Carnival in California.

## III.   **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 839 (N.D. Cal. 2014) (citing *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003)). The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When analyzing a motion to dismiss under Rule 12(b)(6), all allegations of material fact from the complaint are taken as true (*id.* at 94), and the court may not generally consider materials outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Allarcom Pay Television, Ltd. v. Gen.*

---

[2] *See also* MTD at 3 (Defendant explains how the Session Replay Code it deployed collects website visitors' data and uses that data to make a video replay); MTD at 5 (a screenshot of Defendant's website says that collected data is used for ads and social media features).

*Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

A claim has facial plausibility sufficient to survive a Rule 12(b)(6) motion to dismiss when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*; *see also Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (In order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face.")); *Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir. 2000) (citing *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409 (2d Cir. 2000)). "A dismissal under Rule 12(b)(6) for failure to state a cognizable claim may be affirmed only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Kittay*, 230 F.3d at 537; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

## IV.  <u>ARGUMENT</u>

### A. Plaintiffs Sufficiently Plead Wiretapping Claims

#### 1.  Carnival Acted Without Consent

Plaintiffs did not consent to Carnival's procurement and use of the Session Reply Code to intercept and capture their Website Communications. The FAC specifically alleges Plaintiffs were unaware that Carnival allowed a third party to record and track their navigation through Carnival's website and that a third party – the Session Replay Provider – intercepted and recorded extensive information, including personal information, without their consent. *See* FAC ¶¶ 70, 78, 94-98, 100, 115, 118, 126, 128.

Ignoring Plaintiffs' well-pled allegations, Carnival seeks to dismiss Plaintiffs' claims by arguing, incorrectly, that Plaintiffs consented to the use of the Session Replay Code. Carnival alleges two distinct avenues for consent: (1) given the very nature of the Internet, Plaintiffs "should have known" that a third party was intercepting and

recording their Website Communications with Carnival, and (2) the mere existence of a "cookie banner" on www.carnival.com provides evidence of Plaintiffs' consent. Neither avenue is effective to establish consent or waive Plaintiffs' rights to maintain control over the dissemination of their personal information.

Carnival's first argument, that the very nature of the Internet defeats any privacy claim, has already been considered and rejected by numerous courts. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3d Cir. 2019) ("*Google Cookie*") (Internet users had reasonable expectation of privacy in internet communications); *In re Facebook, Inc. Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) ("*Facebook Tracking*") (same); *Microsoft Corp. v. Does 1-18*, No. 1:13-cv-139 (LMB/TCB), 2014 WL 1338677 (E.D. Va. Apr. 2, 2014) (same). Taken to its logical conclusion, Carnival's position would result in a waiver of all privacy rights, on a global basis, with respect to information sent, in whatever format, over the Internet. That is simply not correct. The cases relied upon by Carnival in support of its "global waiver" argument are not applicable. *See* MTD at 8-9 (citing *Commonwealth v. Byrd*, 235 A.3d 311 (Pa. 2020) and *Briddell v. State*, 2016 WL 4698158 (Md. Ct. Spec. App. 2016)). Both *Byrd* and *Bridell* address the concept of "consent" as it relates to recordings of jail-house visits or conversations which were conducted over a telephone, or telephone-like, system where the parties were explicitly placed on notice that the "call may be monitored and recorded." *Byrd*, 235 A.3d at 313; *Briddell*, 2016 WL 4698158, at *1-2. Those cases have no bearing on the current dispute.[3]

As to Carnival's second argument, the existence of a "cookie banner" on Carnival's website is likewise insufficient to constitute evidence of any binding consent to the use of Session Replay Code. Courts have determined that contracts formed on

---

[3] To the extent Carnival relies on *Commonwealth v. Cruttenden*, 58 A.3d 95 (Pa. 2012), cited by the court in *Byrd*, that case – which addressed "consent" in the context of text messages between the defendant and an officer pretending to be the defendant's accomplice – also bears no relevance to the current matter.

the Internet come primarily in two flavors: (1) "clickwrap" (or "click-through") agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and (2) "browsewrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen. *See Register.com*, *Inc. v. Verio, Inc.*, 356 F.3d 393, 428–30 (2d Cir. 2004). As explained by the Ninth Circuit, while clickwrap agreements require the user to expressly manifest assent to the website owner's terms and conditions, browsewrap agreements do not; rather, a party assents to a browsewrap agreement simply by using the website. *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175-76 (9th Cir. 2014) (quoting *Hines v. Overstock.com, Inc*., 668 F. Supp. 2d 362, 366-67 (E.D.N.Y. 2009); *see also Lopez v. Terra's Kitchen, LLC,* 331 F. Supp. 3d 1092, 1098 (S.D. Cal. 2018). "The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement, [taking any affirmative action to acknowledge such terms and conditions,] or even knowing that such a webpage exists." *Be In, Inc. v. Google Inc*., No. 12-CV-03373-LHK, 2013 WL 5568706, at *6 (N.D. Cal. Oct. 9, 2013). "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of a browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011) (citing *Sw. Airlines Co. v. BoardFirst, LLC*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007)); *see also Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020).

With respect to the current dispute, Carnival admits that the "cookie banner" does not present a clickwrap agreement, as a visitor to www.carnival.com can ignore, or simply close, the "cookie banner" without expressing any affirmative consent to the terms and conditions stated therein. *See* MTD at 10. Further, there is no evidence that

Plaintiffs had actual or constructive knowledge of the terms of any "privacy policy." In the absence of such evidence, Carnival's claims that Plaintiffs somehow consented to its procurement and use of Session Replay Code are ineffective. Even if some evidence was presented, Carnival's claim of consent constitutes an affirmative defense which is not properly raised through a Rule 12(b)(6) motion to dismiss.[4] Here, Plaintiffs explicitly allege that they did not consent to the use of the Session Replay Code to intercept their Website Communications and, therefore, Carnival's motion should be denied.

### 2. Carnival Intercepted Plaintiffs' Website Communications

Carnival also claims the FAC fails to allege Plaintiffs' Website Communications were "intercepted." The FAC explicitly alleges, however, that the Session Replay Code intercepted Plaintiffs' Website Communications during transmission. Specifically, the FAC provides detailed allegations of how the Session Replay Code works, how it intercepts the content of the Website Communications and how it sends that intercepted information to the third-party Session Replay Provider. *See* FAC ¶¶ 28-42.

As alleged in the FAC, the Session Replay Code results in the "co-transmission" of visitors' Website Communications, meaning that the communications are transmitted to the website owner (Carnival) and the Session Replay Provider, simultaneously. *See* FAC ¶¶ 28-42. The wiretapping effectuated by the Session Replay Code is ongoing during the visit and intercepts the contents of communications between website visitors and Carnival with instantaneous transmission to the Session Replay Provider. *Id.*

---

[4] As courts have repeatedly stated, affirmative defenses may not be raised on a motion to dismiss. *See, e.g.*, *U.S. Commodity Futures Trading Commission v. Monex Credit Company*, 931 F.3d 966, 972-973 (9th Cir. 2019) (citing *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194, n.6 (9th Cir. 2018)). The exception to this general rule, i.e. when the grounds for the defense are "obvious" from the face of a complaint, does not apply here because neither Plaintiffs' consent nor Carnival's privacy policy are referenced in the FAC.

Courts have drawn a critical distinction between data intercepted "during transmission" and information taken from electronic storage. In analyzing this issue, the Ninth Circuit has construed the Federal Wiretap Act's "interception" element as requiring the communication to be intercepted contemporaneously with transmission. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1076 (N.D. Cal. 2015) (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002)). In *Konop*, the Ninth Circuit held that for an electronic communication to be "intercepted," it must have been "acquired during transmission, not while it is in electronic storage." 302 F.3d at 878; *see also United States v. Steiger*, 318 F.3d 1039, 1048–49 (11th Cir. 2003) (holding that "contemporaneous interception—i.e. an acquisition during 'flight'—is required to implicate the [Federal] Wiretap Act with respect to electronic communications").[5] The court explained that a definition of "intercept" which required acquisition *contemporaneous with transmission* was most "consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Konop*, 302 F.3d at 878. *See also Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004) ("interception" encompasses acquisition which occurs contemporaneously with transmission) (citing *Steiger*, 318 F.3d at 1048–49); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457 (5th Cir. 1994); and *Wesley College v. Pitts*, 974 F. Supp. 375 (D. Del. 1997), *summarily aff'd*, 172 F.3d 861 (3d Cir. 1998)).

Here, Plaintiffs allege the Session Replay Code intercepted their Website Communications "during transmission" or "contemporaneous with transmission" of the information to Carnival. *See* FAC ¶¶ 28-42. Those allegations are not "mere

---

[5] Under the Massachusetts Wiretap Act ("MWA"), the "interception" element is broader than the other relevant jurisdictions. Under the MWA, the term "interception" is defined as "to secretly hear [or] secretly record … the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication."

conclusions" but rather contain a detailed description of how the Session Replay Code intercepts the Website Communications contemporaneously, if not simultaneously, with the transmission of the communications to Carnival. *Id.* At this early stage, Plaintiffs have more than sufficiently alleged how the Session Replay Code works and how it "intercepts" the Website Communications of every visitor to the Carnival website. Consequently, Carnival's motion to dismiss should be denied.

### 3. Carnival Accessed the "Contents" of Plaintiffs' Website Communications

Carnival's argument that the interception of Plaintiffs' Website Communications did not capture the "content" of the communications is also unavailing. The "contents" of an online communication "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (quoting *In re Zynga Priv. Litig*., 750 F.3d 1098, 1106 (9th Cir. 2014)). Numerous federal courts have applied this definition.[6] "Under the [Federal] Wiretap Act, 'contents' is defined as 'any

---

[6] *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (text messages are content, but "user names, passwords, and geographic location information are not"); *In re Vizio, Inc., Consumer Priv. Litig*., 2017 WL 11420284, at *6 (C.D. Cal. July 25, 2017) ("'samples' of the actual content displayed on a consumer's screen" are content because "[w]hen watching a program through a connected device or streaming service, the 'intended message conveyed by the communication' is the program that the consumer is watching") (citing *Zynga*, 750 F.3d at 1106); *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (intercepted text messages and URLs containing search terms constitute content, but user names and passwords do not); *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) ("email content" is content for wiretapping statutes, but "name, address, email address or phone number" are not). Under the Massachusetts Wiretap Act, the term "contents" is broadly defined to mean "any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication." Mass. Gen. Laws Ann. Ch. 272, § 99(B)(5) (West).

information concerning the substance, purport, or meaning of [a] communication.'" *Id*. (quoting 18 U.S.C. § 2510(8)). The term "contents" is not intended to include record information, such as the name, address, or subscriber information of a website user. *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014). "The analysis for violation of [CIPA] … is the same as that under the federal Wiretap Act." *Saleh v. Nike, Inc*., 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021).

Here, Plaintiffs sufficiently allege that the Session Replay Code intercepts the "content" and/or "meaning" of their Website Communications. For example, Plaintiffs allege Session Replay Code intercepts "the occurrence of actions the user takes" on the website (FAC ¶ 30) which can "encompass virtually every user action, including all mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry and numerous other forms of a user's navigation and interaction through the website." FAC ¶ 31. In fact, Session Replay Code even captures data that the user did not intentionally transmit to the website during a visit, such as information typed (i.e. keystrokes) into a text field that the user chooses not to "submit" or "enter" to the website. FAC ¶ 36. In addition, "a variety of highly sensitive information can be captured in event responses from website visitors, including medical conditions, credit card details and other personal information displayed or entered on webpages." FAC ¶ 34.[7] Thus, the information intercepted goes well beyond information pertaining to the characteristics

---

[7] The exact information intercepted, including the dates of such interception, is in the possession of Carnival and its Session Replay Provider. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant.").

of the messages and directly constitutes the meaning and/or contents of the communication.

### 4.     The Session Replay Code is a "Device"

The Federal Wiretap Act, the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), and the Maryland Wiretap Act prohibit interceptions "through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510; 18 Pa. C.S. § 5702; Md. Code Ann., Cts. & Jud. Proc. § 10-401(10). While the Maryland statute does not define the term "device," both WESCA and the Federal Wiretap Act define "electronic, mechanical, or other device" broadly as any "device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication." 18 Pa. C.S. § 5702; 18 U.S.C. § 2510(5). Massachusetts prohibits interception through the use of an "intercepting device" and defines that term as any "device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication other than a hearing aid or similar device[.]" Mass. Gen. Laws Ann. ch. 272, § 99(B)(4).

The Session Replay Code, procured and implemented by Carnival to intercept and record Plaintiffs' Website Communications, is software. The vast majority of courts to consider the question of whether software is a "device" as defined by the Federal Wiretap Act (identical to WESCA's definition) have answered affirmatively. *See, e.g.*, *Luis v. Zang*, 833 F.3d 619, 630 (6th Cir. 2016) (software that allowed monitoring of computer activity was an electronic device); *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) ("The majority of courts to consider this issue have entertained the notion that software may be considered a device for the purposes of the Wiretap Act."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1087 (N.D. Cal. 2015); *Klumb v. Goan*, 884 F. Supp. 2d 644, 661–62 (E.D. Tenn. 2012) (spyware software analyzed under the Federal Wiretap Act); *Rene v. G.F. Fishers, Inc*., 817 F.

Supp. 2d 1090, 1094 (S.D. Ind. 2011) (accepting that software could be a device under the Federal Wiretap Act); *Shefts v. Petrakis*, 2012 WL 4049484, at \*8-9 (C.D. Ill. 2012) (same); *see also United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (similar).

A sister court within the Ninth Circuit, interpreting WESCA and its definition of device, held that software can be a device. *James v. Walt Disney Company*, No. 23-cv-02500-EMC, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023). In that case, the court rejected the defendants' argument that software cannot be a device because it is intangible, noting that, for software to run, it has to be on a computer or other tangible machine. *Id*. The court held that neither the plain language of the statute, dictionary definitions, nor precedent limits "devices" to tangible objects. *Id*. (concluding that "devices" need not be physical or tangible).

Because software, like the Session Replay Code procured and used by Carnival here, constitutes a "device" under the Federal Wiretap Act, it is also "device" under the state wiretap acts. No Pennsylvania, Maryland, or Massachusetts court has held that software is not a "device" for the purposes of their respective wiretap acts. In fact, a Massachusetts court, in a factually similar case, found the defendant used a device in violation of the Massachusetts Wiretap Act. *In re Pharmatrak, Inc*., 329 F.3d 9 (1st Cir. 2003). In *In re Pharmatrak, Inc*., a pharmaceutical company used a service called "NETcompare" to access and collect information about internet users who visited its website, which it used to do intra-industry comparisons of website traffic and usage. 329 F.3d at 10. The court held that "it is clear that Pharmatrak relied on devices such as its web servers to capture information from users." *Id.* at 19.

Moreover, the Session Replay Code is not the only device used by Carnival to unlawfully intercept Plaintiffs' Website Communications. As alleged in the FAC, "Plaintiffs' and Class members' browsers and computing devices and Defendant's

webservers, website, and the Session Replay Code Defendant deployed are all 'devices' for the purposes of the Wiretap Act." *Id.* at ¶ 91.

To find that there was no device used in Defendant's wiretaps would result in lesser privacy protections under the state wiretap acts than their federal counterpart, despite identical definitional or substantially similar language, and Plaintiffs respectfully request this Court decline to do so.

### 5. No "Party Exception" Applies

Contrary to Carnival's argument that it cannot be liable for eavesdropping on its *own* communications with Plaintiffs, Carnival can be held liable under the federal and state wiretapping statutes for directing, aiding and/or abetting its Session Replay Provider to integrate Session Replay Code into its website. *See Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[I]t does not follow that parties to communications are immune from [] liability [under CIPA].") (citing *Ribas v. Clark*, 696 P.2d 637, 640-41 (Cal. 1985) (explaining that CIPA "was designed to protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call")). The Massachusetts Wiretap Act contains no single party exemption. *Welter v. Med. Pro. Mut. Ins. Co.*, No. 22-CV-11047-PBS, 2023 WL 2988627, at *12 (D. Mass. Feb. 23, 2023) (citing *Gilday v. Dubois*, 124 F.3d 277, 289 (1st Cir. 1997) ("A secretive interception occurs under the Massachusetts Wiretap Act unless ___*both parties*___ to a wire 'communication' had 'actual knowledge' of the 'interception[.]'") (emphasis added)). Similarly, the Maryland Wiretap Act does not include a party exemption in this circumstance. *Seal v. State*, 133 A.3d 1162, 1167–68 (Md. 2016) ("The Maryland Wiretap Act restricts one-party consent to those situations in which an investigative or law enforcement officer acting in a criminal investigation, or any other person 'acting at the prior direction and under the supervision of' such an officer, intercepts a communication. The Act otherwise requires the consent of all

parties to a communication under its consent provision.") (citing Md. Code, Cts. & Jud. Proc. § 10-402(c)(2)-(3)).

As alleged in the FAC, Carnival procured the Session Replay Provider to embed Session Replay Code into its website to intercept and transmit the Website Communications of every website visitor to the Session Replay Provider. FAC ¶¶ 1-3, 22-41. Further, Carnival procured another (i.e. aided and abetted) the Session Replay Provider to intercept those same communications. FAC ¶ 93. The Session Replay Code secretly embedded in the Carnival website allowed Carnival and its Session Replay Provider to simultaneously gain access to the Website Communications of Carnival's customers and potential customers, without their knowledge or consent.

Carnival's assertion of a bright-line "party exemption" to the prohibitions of the relevant state statutes is unavailing. "When interpreting state law, federal courts are bound by decisions of the state's highest court." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (quoting *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018)). The California Supreme Court explained the absence of an all-encompassing bright-line "party exemption" under CIPA as far back as 1985. In *Ribas v. Clark*, a wife allowed a third-party to listen in on the conversation between her and her husband without the husband's knowledge or consent. 696 P.2d 637, 639 (Cal. 1985). The California Supreme Court found the wife's actions violated CIPA, even though she was a party to the conversation. *Id.* at 641. In reaching this conclusion, the Supreme Court explained:

> [CIPA] has long been held to prevent one party to a conversation from recording it without the other's consent.… [S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements. Partly because of this factor, [CIPA] has been read to require the assent of **all** parties to a communication before another may listen.

1   *Id.* (internal citations omitted) (emphasis added). The *Ribas* court further explained that
2   "a substantial distinction has been recognized between the secondhand repetition of the
3   contents of a conversation and its simultaneous dissemination to an unannounced
4   second auditor, whether that auditor be a person or mechanical device." *Id.* Thus, the
5   court found that, when a third party is actively listening into a conversation, consent
6   from *all parties*, not just one party, is required. *Id.*; *see also Smith v. LoanMe, Inc.*, 11
7   Cal. 5th 183, 199-200 (Cal. 2021) ("Recording a communication without the speaker's
8   consent can implicate significant privacy concerns, regardless of whether a party or
9   someone else is performing the recording.").

10          Recognizing the lack of an all-encompassing "party exemption" to CIPA, federal
11  district courts have denied motions to dismiss CIPA claims against website owners.
12  *See Tanner v. Acushnet Company*, No. 8:23-cv-00346-HDV-ADSx, 2023 WL
13  8152104, at *6 (C.D. Cal. Nov. 20, 2023) (finding website owner who embedded
14  Session Replay Code into its website was not exempt from CIPA claims); *Byars v.*
15  *Goodyear*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (denying Rule 12(b)(6) motion
16  to dismiss and finding plaintiff sufficiently pled CIPA claim against defendant for
17  embedding Session Replay Code into its website).

18          The California Supreme Court has also emphasized that all CIPA provisions are
19  to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA.
20  *Javier* 1, 2022 WL 1744107, at *2. Courts should not imply exceptions to legislative
21  enactments absent clear legislative intent. The California legislature included several
22  carve-outs to the liability established through Section 631, but no broad "party
23  exemption" appears in CIPA. For example, CIPA includes express exemptions from
24  its coverage for public utilities (*see* § 632.6 and § 632.7), law enforcement (§§ 633,
25  633.02, 633.05, and 633.1), and communications in furtherance of certain crimes (§
26  633.5). Because the California legislature included those exemptions but not others,
27  courts should not create additional exemptions (like a broad "party exemption") absent

28

clear legislative intent. *See Lopez Reyes v. Kenosian & Miele, LLP*, 525 F. Supp. 2d 1158, 1164 (N.D. Cal. 2007) (citing *People v. Palacios*, 41 Cal.4th 720, 731 (Cal. 2007) ("Under the maxim of statutory construction, *expressio unis est exclusion alterius*, if exemptions are specified in a statute, [courts] may not imply additional exemptions unless there is a clear legislative intent to the contrary.") (internal citations omitted)). No such legislative intent exists here.

Carnival's reliance on *Facebook Tracking* is misplaced. *See* MTD at 20. While the Ninth Circuit recognized a limited "party exemption," in that case, it also stressed that the "party exception must be considered in the technical context of [the] case." 956 F.3d at 607. The court determined that a "party exemption" *may* be applicable, but only after considering the factual circumstances presented and the public policy at issue. *Id*. at 608 (noting "the paramount objective of the [Federal Wiretap Act] is to protect effectively the privacy of communications.") (quoting *Joffe v. Google*, 746 F.3d 920, 931 (9th Cir. 2013)). The Court concluded that "Facebook is not exempt from liability as a matter of law under the [Federal] Wiretap Act or CIPA as a party to the communication[,]" explaining that "[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.* Thus, in *Facebook Tracking*, even after recognizing a purported "party exclusion" under CIPA, the Ninth Circuit reversed the district court's dismissal of the claims against Facebook under CIPA (and the federal Wiretap Act). *Id.* Here, the facts and the "technical context" do not support a finding that Carnival is exempt from CIPA as a matter of law. *See Facebook Tracking*, 956 F.3d at 608.

## B. Plaintiffs Sufficiently Plead Invasion of Privacy Claims

Plaintiffs adequately allege claims for invasion of privacy under the laws of California, Maryland, Massachusetts, and Pennsylvania. *See* Counts IV, VI, VIII, X. Generally, the elements of the claim under each state law are a reasonable expectation

17

of privacy and an intrusion that is considered highly offensive or unreasonable.[8] Surreptitious electronic surveillance, as Plaintiffs allege (*see* Section II, *supra*), is a quintessential form of invasion of privacy. *See* Restatement (Second) of Torts § 652B (1977), Illustration 2-3 (wiretapping as an illustration of an actionable invasion of privacy); *Wolfson v. Lewis*, 924 F. Supp. 1413, 1434 (E.D. Pa. 1996) ("An intrusion upon seclusion can be by electronic means such as wiretapping[.]").

Carnival concedes Plaintiffs have adequately alleged a reasonable expectation of privacy, yet grossly mischaracterizes Plaintiffs' allegations to argue that its conduct is not "highly offensive." *See* MTD at 22.[9] However, "[t]he ultimate question of whether [a defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Facebook Tracking*, 956 F.3d at 606; *accord Wofse v. Horn*, 523 F. Supp. 3d 122, 137-38 (D. Mass. 2021); *Diaz v. D.L. Recovery Corp.*, 486 F. Supp. 2d 474, 476, 480 (E.D. Pa. 2007). Also, where a defendant, like Carnival here, claims its data gathering and use practices amount to "routine commercial behavior" (MTD at 23), dismissing an invasion of privacy claim at the pleading stage is "particularly inappropriate where … [the] Defendant[] [is] the only party privy to the true extent of the intrusion on Plaintiffs' privacy." *Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, at *8 (C.D.

---

[8] *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 601 (9th Cir. 2020) (California) (plaintiff must show "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive."); *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 383 (D. Md. 2012) (Maryland) (defendant's intentional intrusion upon plaintiff's "solitude, seclusion, private affairs, or concerns" must "be highly offensive to a reasonable person"); *Burger v. Blair Med. Assocs., Inc.*, 600 Pa. 194, 203 (2009) (Pennsylvania) (same); Mass. Gen. Laws ch. 214, § 1B ("A person shall have a right against unreasonable, substantial or serious interference with his privacy."); *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021) (Massachusetts) (defendant must have "intruded unreasonably upon the plaintiff's 'solitude' or 'seclusion'").

[9] To the extent Carnival argues on reply that Plaintiffs failed to allege a reasonable expectation of privacy, that argument is waived. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

Cal. 2022).

Here, Plaintiffs' extensive factual allegations plausibly demonstrate both that Plaintiffs had a reasonable expectation of privacy (FAC ¶¶ 22-27, 125-27, 152-54, 187-90, 217-20) and that Carnival's conduct is highly offensive. Plaintiffs allege Carnival intentionally had Session Replay Code embedded on their computer browsers without their consent in order to obtain intimate personal information and data from their Website Communications to create detailed user profiles for its own commercial gain. *Id*. ¶¶ 5-9, 65-70, 126-28, 132, 153-55, 160, 188-91, 196-97, 218-21, 226; *see also id*. ¶¶ 28-64. This loss of privacy and confidentiality has caused Plaintiffs to experience mental anguish, emotional distress, worry, and fear. *Id*. ¶¶ 129-30, 156-58, 192-94, 222-24. As alleged, the Session Replay Code creates a unique "fingerprint" that allows Carnival to track a user's activity on ***any other website*** monitored by the Session Replay Provider. *Id*. ¶¶ 40-42, 190, 220. Moreover, Plaintiffs allege that Carnival is capable of sharing sensitive and confidential information with third parties without a user's affirmative consent. *See* FAC ¶¶ 23-25, 34.

Taking Plaintiffs' allegations as true and drawing all inferences in Plaintiffs' favor, as the Court must, Plaintiffs plausibly allege Carnival's conduct is highly offensive to a reasonable person. *See Tanner v. Acushnet Co*., No. 823CV00346HDVADSX, 2023 WL 8152104, at *7 (C.D. Cal. Nov. 20, 2023) (rejecting argument that intrusion was not highly offensive based on substantially similar allegations relating to Session Replay Code); *see also Facebook Tracking*, 956 F.3d at 606 ("Plaintiffs' allegations of surreptitious data collection when individuals were not using Facebook are sufficient to survive a dismissal motion on the issue" of whether the intrusion was highly offensive); *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *8 (N.D. Cal. Oct. 23, 2019) (intrusion that allowed defendant to associate plaintiff's browsing habits with his identity plausibly alleged highly offensive conduct); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1035

(N.D. Cal. 2019) (surreptitiously tracking users and gathering data to be used in targeted advertising plausibly alleged highly offensive conduct); *In re: Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (California and Massachusetts law) (defendant's collection of plaintiffs' video viewing history without consent plausibly alleged a highly offensive intrusion).

Carnival's reliance on *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) is entirely unavailing. Carnival claims the case holds that a defendant that "does nothing more than engage in 'routine commercial behavior'" cannot be engaged in highly offensive conduct. MTD at 23 (citing *Google Assistant*).[10] This is wrong. The court rejected Google's "routine commercial behavior" argument because:

> determining whether an intrusion is "highly offensive" requires a fact-intensive inquiry that "examine[s] all of the surrounding circumstances." Such an inquiry cannot be conducted at the motion to dismiss stage where, as here, there are open factual questions regarding "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive."

*Id*. Carnival's other cited cases almost entirely pre-date *Facebook Tracking*, and thus, do not reflect the current law in this Circuit and are no longer persuasive. Thus, the Court should deny Carnival's motion to dismiss on this basis.

### C. Plaintiffs Sufficiently Plead Computer Fraud and Abuse Act Claims

The parties agree that, "[t]o state a claim under the Computer Fraud and Abuse

---

[10] While the *Google Assistant* court found that the plaintiffs failed to allege a reasonable expectation of privacy, Carnival is not challenging this element of the claim. *See* MTD at 22-23. Moreover, the *Google Assistant* court found that the plaintiffs cured the pleading deficiencies and adequately alleged a reasonable expectation of privacy in their amended complaint. *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 958-59 (N.D. Cal. 2021).

Act ("CFAA"), Plaintiffs must plead facts showing that Carnival **first** 'intentionally accesse[d] a computer without authorization or exceed[ed] [its] authorized access, and thereby obtain[ed]... information from [the] protected computer, **and second** caused a 'loss to 1 or more persons … aggregating at least $5,000 in value' or a 'threat to public health or safety.'" MTD at 24 (quoting 18 U.S.C. §§1030(a)(2)(C), 1030(c)(4)(A)(i)(I) & (IV), 1030(g)). As discussed below, Plaintiffs have sufficiently pled both requirements.

### 1.   Carnival Exceeded Its Authorized Access to Plaintiffs' Computers

The CFAA "defines the term 'exceeds authorized access' to mean 'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain.'" *Van Buren v. United States*, 141 S. Ct. 1648, 1652 (2021) (quoting 18 U.S.C. § 1030(e)(6)). The FAC alleges that, by placing Session Replay Code on its website, Carnival caused such code to be introduced into each website visitor's internet browser—*i.e.*, altering information maintained on those visitors' computers—for the purpose of intercepting and recording their electronic communications. *See* FAC ¶ 1 ("Carnival procures third-party vendors, such as Microsoft Corporation, to embed snippets of JavaScript computer code ('Session Replay Code') on Carnival's website, **which then deploys on each website visitor's internet browser** for the purpose of secretly intercepting and recording the website visitor's electronic communications with the Carnival website[.]"); *id.* at ¶ 125 ("Carnival installed Session Replay Code on its website **and that code was present on Plaintiffs' and the Class members' web browsers**, recording their every move.") (emphases added). The FAC further alleges that "Plaintiffs did not provide, and could not have provided, Carnival with consent to use Session Replay Code and Session Replay Providers to track their website sessions because, for example, Carnival's website does not put Plaintiffs on notice of or disclose, in any way, its use of Session

Replay Code or Session Replay Providers." *Id.* at ¶ 70. Taken together, such allegations plausibly allege that Carnival's use of Session Replay Code exceeded its authorized access with respect to Plaintiffs' computers and those of the proposed Class under the CFAA.

Carnival nonetheless argues that Plaintiffs' CFAA claims fail as a matter of law because "the FAC alleges the (sic) 'Carnival installed Session Replay Code ***on its website***…i.e., on its own servers—and not on any device of Plaintiffs'." MTD at 24-25 (emphasis in original). This is false. The FAC alleges that the Session Replay Code was specifically designed so that it would deploy on website visitors' internet browsers, FAC ¶¶ 1, 125, thereby altering those visitors' computers. Carnival's attempts to mischaracterize or ignore Plaintiffs' well-pled allegations should be rejected.

### 2. Carnival Caused Losses Exceeding $5,000 and Created a Threat to Public Safety

To bring a civil claim under the CFAA, a plaintiff must allege that the purported violation involves "1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). Carnival's misconduct involves the factors in subclauses (I) ("loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value") and (II) ("a threat to public health or safety"). FAC ¶¶ 107-108. In particular, the FAC alleges that Carnival's use of Session Replay Code resulted in "the secret transmission of Plaintiffs' and the Class's private and personally identifiable data and content to undisclosed third parties," *id.* ¶ 107, that this private and personally identifiable data and content contains "highly sensitive information" and has "immense economic value," *id.* ¶¶ 34, 17-21, and the disclosure of which not only deprives these individuals of the economic value of their own information but poses dangers to the public, such as through identity theft and online scams. *Id.* ¶¶ 43-49, 131-32.

Carnival, relying on the Supreme Court's decision in *Van Buren*, argues that the CFAA only covers loss and damage in the form of "technological harms—such as the corruption of files" that result from "the typical consequences of hacking." MTD at 25 (quoting *Van Buren v. United States*, 141 S. Ct. 1648, 1659-60 (2021)). But the harms resulting from Carnival's use of Session Replay Code *are* technological in nature— i.e., they are the result of Carnival causing such codes to be deployed on website visitors' internet browsers, which in turn resulted in the misappropriation of economically valuable information without consent or remuneration. This type of harm is sufficient to satisfy the loss requirement found in the CFAA. *See, e.g.*, *In re Toys R Us, Inc., Priv. Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *11 (N.D. Cal. Oct. 9, 2001) (holding that allegation that defendants implanted a cookie in plaintiffs' computers resulting "misappropriation of the economic value of plaintiffs' personalty" sufficient to satisfy loss requirement under the CFAA) (internal quotation marks omitted).

Moreover, *Van Buren* did not hold that "intangible or other privacy harms" (MTD at 32) could not result in damage or loss under the CFAA. In *Van Buren*, a police officer was convicted of honest-service wire fraud and a felony violation of the CFAA for running a license-plate search on a law-enforcement database in exchange for money. 141 S. Ct. at 1649. More specifically, the officer used a computer he was authorized to access to obtain information from a database he was also authorized to access, but he did so for an improper purpose—i.e., to share that information with a private individual in exchange for money. *Id.* Under those circumstances, the Supreme Court held that the officer did not violate the CFAA because he did not exceed his authorized access to the computer or database; the CFAA's loss requirement for civil liability was never at issue. *Id.* at 1662. The language regarding "loss" and damages" cited by Carnival only arose as part of the Supreme Court's analysis in finding that the CFAA's focus is on *how* information on a computer is accessed, not *why* it was

accessed. *Id.* at 1659-60. Here, neither Carnival nor any of the third parties involved had authorization to deploy Session Replay Code onto the internet browsers found on Plaintiffs' or the Class's electronic devices. FAC ¶ 70. Thus, *Van Buren* is wholly inapposite because this case deals with *how* Carnival deployed Session Replay Code on Plaintiffs' and the Class's internet browsers without authorization, not *why* it did so.

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Plaintiffs' and the Class's personal information is their property and has significant economic value. FAC ¶¶ 17-21. By secretly deploying Session Replay Code onto Plaintiffs' and the Class's internet browsers to collect and disseminate their personal information, Carnival and its Session Replay Code providers impaired the integrity of both Plaintiffs' and the Class's electronic devices *and* their personal information. *See Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc*., 119 F. Supp. 2d 1121, 1127 (W.D. Wash. 2000) (holding that the collection and dissemination of confidential information constituted an impairment of the integrity of such information, resulting in damage sufficient to state a claim under the CFAA); *SolarCity Corp. v. Pure Solar Co*., No. CV16-01814-BRO (DTBx), 2016 WL 11019989, at *8 (C.D. Cal. Dec. 27, 2016) ("where, as here, 'no data was physically changed or erased,' but 'an impairment of [the data's] integrity occurred,'—i.e., approximately 100,000 customers' confidential information was accessed—Plaintiff establishes damage under the CFAA") (quoting *Shurgard*, 119 F .Supp. 2d at 1127).

Carnival next argues that a CFAA violation only poses a "threat to public health and safety" where "'the access itself creates th[e] threat' … not where (as alleged here) 'a third-party's foreseeable reaction to the unauthorized access creates the threat,' such as through an exposure of supposedly private information." MTD at 25 (quoting *Colo. Republican Comm. v. Doe*, Civ. A. No. 16-cv-01058, 2016 WL 3922156, at *1-2 (D. Colo. July 21, 2016)). Even ignoring that *Colo. Republican Comm.* is nonbinding and

has absolutely nothing to do with the exposure of private information, Carnival's argument again misses the mark. Plaintiffs here do not allege that their harms stem from some third-party's reaction to the secret interception and transmission of their personal information; rather, their harms stem from Carnival's actions itself. FAC ¶ 50.[11] Although not addressed by *Colo. Republican Comm.*, other courts have confronted CFAA claims involving threats to public safety which resulted from disclosures of private information and found them sufficient to state a claim. *See, e.g.*, *Vaquero Energy, Inc. v. Herda*, No. 1:15-CV-0967-JLT, 2015 WL 5173535, at *8 (E.D. Cal. Sept. 3, 2015) (finding likelihood of success on the merits with respect to CFAA claim in motion for preliminary injunction where plaintiff alleged a threat to public safety stemming from, *inter alia*, unauthorized access to computers which contained "personally identifiable information and financial data of both personnel and customers").

## V.   <u>CONCLUSION</u>

For the above reasons, Plaintiffs respectfully ask this Court to deny Defendant's motion to dismiss in its entirety.

---

[11] The distinction made in *Colo. Republican Comm.* was between situations where access was used to cause a public threat (e.g., hacking into a classmate's social media account and encouraging him to commit suicide) versus those where access was used in a manner that did not directly cause public harm but harm was foreseeable (e.g., hacking into a classmate's social media account and taunting him for being unattractive, who then does commit suicide). 2016 WL 3922156, at *2. The *Colo. Republican Comm.* court held that the former is actionable under the CFAA while the latter is not. *Id.*

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
3:23-CV-00236-GPC-MSB

Dated: December 6, 2023

Respectfully Submitted,

*/s/ Steven M. Nathan*
Steven M. Nathan (SBN 153250)
**HAUSFELD LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004
Telephone: (646) 357-1100
Email: snathan@hausfeld.com

James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street, N.W., Suite 300
Washington, D.C. 20006
Telephone: 202-540-7200
jpizzirusso@hausfeld.com

Jonathan M. Jagher
**FREED KANNER LONDON &
MILLEN LLC**
923 Fayette Street
Conshohocken, Pennsylvania 19428
Telephone: 610-234-6486
jjagher@fklmlaw.com

Todd D. Carpenter (SBN 234464)
**LYNCH CARPENTER, LLP**
1234 Camino del Mar
Del Mar, California 92014
Telephone: 619-762-1910
Facsimile: 619-756-6991
todd@lcllp.com

Thomas M. Beh
**THE MURRAY LAW FIRM**
701 Poydras Street, Suite 4250
New Orleans, Louisiana 70139
Telephone: 504-525-8100
TBeh@Murray-lawfirm.com

Katrina Carroll
**LYNCH CARPENTER, LLP**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: 312-750-1265
katrina@lcllp.com

Gary F. Lynch
Elizabeth Pollock-Avery
Kelly K. Iverson
Jamisen A. Etzel
Nicholas A. Colella
Patrick D. Donathen
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
elizabeth@lcllp.com
kelly@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com
patrick@lcllp.com

Joseph P. Guglielmo
Carey Alexander
Ethan S. Binder
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, New York 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com
ebinder@scott-scott.com

27

1

2   -and-

3   Brian C. Gudmundson
    Michael J. Laird
4   Rachel K. Tack
5   **ZIMMERMAN REED LLP**
    1100 IDS Center
6   80 South 8th Street
7   Minneapolis, MN 55402
    Telephone: 612-341-0400
8   Brian.gudmundson@zimmreed.com
9   Michael.laird@zimmreed.com
    Rachel.tack@zimmreed.com
10
11  ***COUNSEL FOR PLAINTIFFS***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
3:23-CV-00236-GPC-MSB