JACOB HEATH (STATE BAR NO. 238959)
jheath@orrick.com
ARAVIND SWAMINATHAN (*pro hac vice forthcoming*)
aswaminathan@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

Attorneys for Defendant
CARNIVAL CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIA PRICE, ERICA MIKULSKY, MARILYN HERNANDEZ, DANIEL RUBRIDGE, and ARIEL OLIVER, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARNIVAL CORPORATION,<br><br>Defendant. | Case No. 3:23-CV-00236-GPC-MSB<br><br>**DEFENDANT CARNIVAL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:      January 12, 2024<br>Time:      1:30 p.m.<br><br>Judge:      Hon. Gonzalo P. Curiel<br>Location:  Courtroom 2D, 2d Floor |

1

2

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................. ...... iii

I.   INTRODUCTION ............................................................. .........1

II.  LEGAL ARGUMENT ........................................................... .........1

    A.   Plaintiffs Fail To State A Wiretapping Claim. ....................1

        1.   Plaintiffs fail to plead facts showing that Carnival acted
without consent. ................................................................. ..1

        2.   Plaintiffs fail to plead facts showing that Carnival
"intercepted" a communication. ............................................. ..3

        3.   Plaintiffs fail to plead facts showing that Carnival accessed
the "contents" of any message. ............................................. ..4

        4.   Plaintiffs fail to plead facts showing that Carnival used a
"device" to accomplish the supposed interception. ................. ..5

        5.   Plaintiffs' Federal Wiretap Act claim separately fails because
Carnival is a party to the communications. ............................. ..7

    B.   Plaintiffs Fail to State an Invasion of Privacy Claim. ...........8

    C.   Plaintiffs Fail to State a CFAA Claim. ................................9

        1.   Plaintiffs fail to plead facts showing that Carnival exceeded
its authorized access to Plaintiffs' computers. ........................ ..9

        2.   Plaintiffs fail to plead facts showing that Carnival caused
losses of at least $5,000 or created a threat to public safety .... ..9

III. CONCLUSION ............................................................... ......10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cardoso v. Whirlpool Corp.*,
  2021 WL 2820822 (S.D. Fla. 2021)..................................................................7

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015)..............................................................6

*Commonwealth v. Byrd*,
  235 A.3d 311 (Pa. 2020)...................................................................................1

*Commonwealth v. Cruttenden*,
  58 A.3d 95 (Pa. 2012).......................................................................................2

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020).........................................................................7, 8

*Farst v. AutoZone, Inc.*,
  2023 WL 7179807 (M.D. Pa. 2023)...............................................................2, 8

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012)...........................................................................3

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022).........................................................................10

*Jacome v. Spirit Airlines Inc.*,
  2021 WL 3087860 (Fla. Cir. Ct. 2021)..............................................................7

*James v. Walt Disney Co.*,
  2023 WL 7392285 (N.D. Cal. 2023)..................................................................6

*Klumb v. Goan*,
  884 F. Supp. 2d 644 (E.D. Tenn. 2012).............................................................5

*Lefkowtiz v. Scytl USA*,
  2016 WL 537952 (N.D. Cal. 2016)....................................................................5

*Licea v. Cinmar, LLC*,
  2023 WL 2415592 (C.D. Cal. 2023)..................................................................4

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................. 8

*Luis v. Zang*,
   833 F.3d 619 (6th Cir. 2016) .................................................................. 5

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003) ...................................................................... 6

*Popa v. Harriet Carter Gifts, Inc.*,
   52 F.4th 121 (3d Cir. 2022) .................................................................... 6

*Popa v. Harriet Carter Gifts, Inc.*,
   426 F. Supp. 3d 108 (W.D. Pa. 2019) ................................................. 6, 9

*Potter v. Havlicek*,
   2008 WL 2556723 (S.D. Ohio 2008) ..................................................... 7

*Rene v. G.F. Fishers, Inc.*,
   817 F. Supp. 2d 1090 (S.D. Ind. 2011) .................................................. 5

*Shefts v. Petrakis*,
   2012 WL 4049484 (C.D. Ill. 2012) ........................................................ 5

*Silver v. Stripe Inc.*,
   2021 WL 3191752 (N.D. Cal. 2021) ...................................................... 1

*Social Media Cases*,
   No. 22STCV21355 (Cal. Sup. Ct. Oct. 13, 2023) ................................. 7

*Sw. Marine Inc. v. Mabus*,
   2014 WL 654593 (S.D. Cal. 2014) ........................................................ 9

*Underhill v. Kornblum*,
   2017 WL 2869734 (S.D. Cal. 2017) ...................................................... 4

*United States v. Barrington*,
   648 F.3d 1178 (11th Cir. 2011) ............................................................. 5

*United States v. Hutchins*,
   361 F. Supp. 3d 779 (E.D. Wis. 2019) .................................................. 6

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021) ..................................................................... 9, 10

1
2

*Vaquero Energy, Inc. v. Herda*,
  2015 WL 5173535 (E.D. Cal. 2015) ................................................... 10

3
4

*In re Vizio, Inc. Consumer Privacy Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................... 4

5
6

*Williams v. DDR Media, LLC*,
  2023 WL 5352896 (N.D. Cal. 2023) .................................................... 8

7

*Yagman v. Pompeo*,
  868 F.3d 1075 (9th Cir. 2017) ............................................................. 6

8

**Rules**

9
10

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1

11

**Other Authorities**

12

https://www.casd.uscourts.gov ................................................................. 9

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

Plaintiffs' Opposition, ECF No. 25 ("Opp.") to Carnival's Motion to Dismiss, ECF No. 23 ("Mot."), is a bit of a confusing read. Sometimes, it spends lengthy paragraphs quoting and citing cases, only to ultimately agree with Carnival on the law. *See, e.g.*, Opp. 7, 9, 10-11. Other times, it entirely fails to respond to any of the arguments that Carnival raised on the relevant point. *See, e.g.*, Opp. 9-10. And still other times, it does the opposite—mounting defenses against challenges that Carnival never made. *See* Opp. 14-16. In the end, though, the result is the same: Nothing in Plaintiffs' Opposition persuasively rebuts the arguments raised in Carnival's Motion. Plaintiffs' First Amended Complaint, ECF No. 22 ("FAC") should be dismissed.

## II.  LEGAL ARGUMENT

### A.  Plaintiffs Fail To State A Wiretapping Claim.

1.  *Plaintiffs fail to plead facts showing that Carnival acted without consent.*

Plaintiffs do not seriously dispute that they must plead facts showing that Carnival acted without consent.[1] *See* Opp. 5-8. And as Carnival Motion's showed (at § I.V.A), Plaintiffs here consented to Carnival's tracking of their interactions with its website by using it where any "reasonably intelligent person" would have understood that such tracking was likely. *Commonwealth v. Byrd*, 235 A.3d 311, 319-20 (Pa. 2020). Indeed, that would have been apparent in at least two ways: (1) because Plaintiffs were engaging with the website specifically to share information with it; and (2) from Carnival's Privacy Notice, which expressly disclosed as much.

Plaintiffs simply mischaracterize the first of these points, resorting to

---

[1] Plaintiffs briefly suggest that consent is an "affirmative defense which is not properly raised through a Rule 12(b)(6) motion to dismiss." Opp. 8 & n.4. It is not: "Consideration of consent is appropriate on a motion to dismiss where [as here] lack of consent is an element of the claim." *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. 2021) (dismissing wiretapping claim for that reason).

hyperbole "that the very nature of the Internet defeats *any* privacy claim." Opp. 6 (emphasis added). But that is not what Carnival argued. Instead, Carnival maintained—just as the Pennsylvania Supreme Court has—that "by the very act of sending a communication over the Internet, the party expressly consents to the recording of the message." *Com. v. Cruttenden*, 58 A.3d 95, 98 (2012); *see* Mot. 9. In other words, by interacting with Carnival's website for the specific purpose of sending information to Carnival, *see* FAC ¶ 8, Plaintiffs consented to Carnival recording those interactions, and potentially sharing them with third parties. *See Cruttenden*, 58 A.3d at 98 (no wiretapping violation where recipient "forward[s] the [internet] communications" to another). That does not mean that visitors forfeit *all* privacy rights via those interactions—if Carnival's website turned on the camera of the user's laptop and started recording his/her movements, unbeknownst to user, that would potentially be actionable. But where, as here, **Plaintiffs** used Carnival's website to transmit information to Carnival, they would have understood—indeed, expected—Carnival to keep track of it, and potentially to use software tools provided by other companies to do so. *See Farst v. AutoZone, Inc.*, 2023 WL 7179807, at *4 (M.D. Pa. 2023) ("Shopping on a public website, like shopping in a public store, is not an activity one can reasonably expect to keep private from the retailer."). The law thus bars Plaintiffs from turning around and suing Carnival for doing exactly that.

As to the cookie banner, Plaintiffs spill a lot of ink to ultimately agree with Carnival that "the validity" of Carnival's Privacy Notice "depends on whether the user has actual or constructive knowledge" of it. Opp. 7; *accord* Mot. 11. And as Carnival already explained, a reasonable website visitor would have had at least constructive knowledge of the Privacy Notice based on the persistent cookie banner that linked to it, and which appeared immediately upon visiting the site. Mot. 5, 10-11. Plaintiffs' only response is to claim that "there is no evidence that Plaintiffs had actual or constructive knowledge" of the Privacy Notice, because "a visitor to www.carnival.com can ignore, or simply close, the 'cookie banner.'" Opp. 7-8. But

whether Plaintiffs made the choice to ignore the Privacy Notice is irrelevant. The entire point of *constructive* knowledge is that it exists even if the Plaintiffs never had actual knowledge, so long as they "had enough information to warrant an investigation." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). Given the persistent link to the Privacy Notice—which would have followed Plaintiffs through all of their interactions with Carnival's website—Plaintiffs clearly were put on constructive notice that Carnival "use[s] third-party tools to collect information you provide to us or information about how you use [our website] and may record your mouse movements, scrolling, clicks and keystroke activity on our Sites." Mot. 4. For this reason, their claims must be dismissed.

### 2. *Plaintiffs fail to plead facts showing that Carnival "intercepted" a communication.*

Plaintiffs agree that to state a wiretapping claim, they must plead facts showing "contemporaneous interception—i.e. an acquisition during 'flight.'" Opp. 9. And as Carnival's Motion explained (as § IV.A.2), Plaintiffs' own FAC indicates that the alleged recording here occurs **before** any information was transmitted to Carnival, and not (like a wiretap) on the wires in between. Indeed, Plaintiffs allege that the Clarity code captures information **even if it is never sent to Carnival at all**, *see* FAC ¶ 35—meaning that the alleged interception **cannot** occur during transmission of the information, because the data **collection** occurs even if **transmission** never does.

Plaintiffs do not respond to this argument at all. *See* Opp. 8-10. Instead, they simply repeat that they "allege the Session Replay Code intercepted their Website Communications 'during transmission' or 'contemporaneous with transmission' of the information to Carnival," and insist that those allegations "are not 'mere conclusions' but rather contain a detailed description of how the Session Replay Code intercepts the Website Communications contemporaneously." Opp. 9. To the contrary, non-specific allegations that say nothing about how the Session Replay Code works on Carnival's website, but simply claim that the recording occurred

"during transmission" or "contemporaneous with transmission," are identical to those that courts have already found to be impermissibly conclusory. *See, e.g.*, *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *10 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were 'intercepted in real time.'"); *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017); *Underhill v. Kornblum*, 2017 WL 2869734, at *4 (S.D. Cal. 2017). Moreover, Plaintiff never says what part of the "detailed description" supposedly explains "how the Session Replay Code intercepts Website Communications." Opp. 10. Indeed, they cannot. As just noted, the FAC's "detailed description" demonstrates only that the recording happened ***before*** transmission and thus is nonactionable.

> 3. *Plaintiffs fail to plead facts showing that Carnival accessed the "contents" of any message.*

Plaintiffs admit that the message "contents" to which the wiretapping laws apply includes only "information concerning the substance, purport, or meaning of a communication,'" and does not "include record information, such as the name, address, or subscriber information of a website user." Opp. 10-11. But then, inexplicably, Plaintiffs list various types of information which session replay code "can" capture, including "mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry and numerous other forms of a user's navigation and interaction through the website," Opp. 11—none of which constitute "contents" of a communication. Indeed, Plaintiffs avoid making any representation as to what information that they believe Carnival *did* capture here. Instead, they argue that they should not have to, because "[t]he exact information intercepted … is in the possession of Carnival." Opp. 11 & n.7. That argument fails for two reasons.

As demonstrated in Carnival's Motion (at 15-17), all of the information that Plaintiffs claim to have entered into Carnival's website—i.e., all of the information that could have even *possibly* been intercepted—fails to qualify as substantive message "contents." Indeed, Carnival walked through every type of information

alleged and explained—with copious cites to caselaw—why each failed to meet the relevant legal standard. *Id.* Plaintiffs offer no response to any of those arguments, attempting neither to distinguish the cases cited by Carnival nor to contend that they were wrongly decided, and "therefore concede[] [them] through silence." *Lefkowtiz v. Scytl USA*, 2016 WL 537952, at *3 (N.D. Cal. 2016).

What is more, Plaintiffs cannot, on the one hand hale Carnival into court on grounds that it intercepted their personal information, *see* FAC ¶ 127, while on the other claiming that actually they have no idea what information, if any, Carnival supposedly intercepted. Plaintiffs are the ones who used Carnival's website, and then filed a lawsuit accusing it of wiretapping; either they believe that Carnival intercepted information giving rise to such a claim or they do not. They cannot have it both ways.

### 4. *Plaintiffs fail to plead facts showing that Carnival used a "device" to accomplish the supposed interception.*

Plaintiffs agree that the wiretapping laws apply only if Carnival used a "device" to intercept their communications. Opp. 12-14. And Carnival has explained (at Mot. 17-20) how all indicators of statutory meaning—text, context, and the rule of lenity—confirm that the software alleged here does not qualify as such a "device."

Plaintiffs do not directly respond to any of those statutory arguments. Instead, they suggest that this Court should ignore the statute itself because "the vast majority of courts to consider the question" have held that software is a "device." Opp. 12. But in fact, hardly any courts have addressed the issue. What Plaintiffs largely rely on are decisions *applying* wiretapping laws in cases involving software, but without considering (much less ruling on) whether software is, in fact, a "device."[2] Each thus

---

[2] Plaintiffs' citations (at Opp. 12-13) to *Luis v. Zang*, 833 F.3d 619, 630 (6th Cir. 2016), *Klumb v. Goan*, 884 F. Supp. 2d 644, 661-62 (E.D. Tenn. 2012), *Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1094 (S.D. Ind. 2011), *Shefts v. Petrakis*, 2012 WL 4049484, at *8-9 (C.D. Ill. 2012), and *United States v. Barrington*, 648 F.3d

represents "nothing more than a drive-by ruling," entitled to little weight on this issue. *Yagman v. Pompeo*, 868 F.3d 1075, 1084 (9th Cir. 2017).

The only case that comes close to engaging meaningfully on the issue is *James v. Walt Disney Co.*, 2023 WL 7392285 (N.D. Cal. 2023). *James* based its decision on *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019), which the *James* court viewed as having resolved the issue by denying a motion to dismiss on the grounds that it was "less than clear" whether "code qualifies as a 'device.'" 2023 WL 7392285, at *12. But *James*'s view that *Popa* is conclusive simply ignores the Third Circuit's later decision in the same case, which expressly left open whether software qualifies as a "device." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022). The only other case that even remotely touches the issue is *United States v. Hutchins*, 361 F. Supp. 3d 779 (E.D. Wis. 2019). But that case simply relied on the same cases discussed in the footnote above—which again, did not actually consider this question—and so has little independent value. *See id.* at 795.

Those same cases, however, also recognized that others have disagreed with them on this question. *Hutchins*, 361 F. Supp. 3d at 794; *James*, 2023 WL 7392285, at *14 ("[S]ome courts have held software cannot be a 'device.'"). Here are just a

---

1178, 1203 (11th Cir. 2011), all refer to discussions of the separate "in transit" requirement, not any consideration of whether software qualifies as a "device." Their citation (at Opp. 12) to *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1087 (N.D. Cal. 2015), similarly refers to a discussion of a different question—whether the software was "being used by a provider of wire or electronic communication service in the ordinary course of its business"—not (as here) on whether the software itself meets the statutory definition of "device" in the first place. And Plaintiffs' citation (at Opp. 13) to *In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003) is especially spurious, as that opinion expressly noted that the question of "whether [the defendant] used a device" was not "contested," and so the court had no occasion to rule on it. *Id.* at *18.

CARNIVAL'S REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT
3:23-CV-00236

few: *Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio 2008) ("[T]he word 'device' does not encompass software."); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *5 (Fla. Cir. Ct. 2021) ("[C]ourts have held that software … [does] not constitute [a] device[] under the wiretapping statutes.") (collecting cases); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. 2021) (dismissing wiretapping claim based on "session replay technology" for this reason).[3]

The point here, however, is not (as Plaintiffs suggest) about counting noses. Whether software qualifies as a "device" is a legal question—and, as just illustrated, an open one at that. On that issue, Carnival has offered a careful and thorough analysis of the statutory language, context, and rule of lenity to explain why software does not qualify; Plaintiffs have offered nothing. For the reasons given in Carnival's motion—which Plaintiffs have failed to rebut—this Court should conclude that software is not a "device" under the wiretapping laws, and dismiss Plaintiff's claims.

5. *Plaintiffs' Federal Wiretap Act claim separately fails because Carnival is a party to the communications.*

There is no dispute that the Federal Wiretap Act "contain[s] an exemption from liability for a person who is a 'party' to the communication," *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), or that here Carnival is such a party, *see* FAC ¶ 1. That alone should end Plaintiffs' Federal Wiretap Act claim. Plaintiffs respond, however, by (curiously) spending many pages discussing laws ***other than*** Federal Wiretap Act, all of which are irrelevant to this question. *See* Opp. 14-17. In fact, Plaintiffs' only relevant argument about Federal Wiretap Act is that its party exception did not apply to Facebook in the case cited just above. Opp.

---

[3] These decisions are of a piece with the broader trend of recognizing that software is critically different from—and thus not subject to the same laws as—traditional, tangible articles. *See, e.g.*, *Social Media Cases*, No. 22STCV21355, at 27-40 (Cal. Sup. Ct. Oct. 13, 2023) (holding that social media websites are not "products" subject to traditional products liability law), *attached as* Ex. A.

17. But that is because, in that case, Facebook was ***not a party*** to the communications; rather it was alleged to be a third-party eavesdropper, tracking communications between the plaintiffs and *other websites*. *In re Facebook*, 956 F.3d at 596, 607-08. Thus, it was those websites (and not Facebook) who were the parties and thus exempt from Federal Wiretap Act liability. Here, however, Carnival is undisputedly a party, and so the Federal Wiretap Act's party exception applies to it with full force.[4]

### B.     Plaintiffs Fail to State an Invasion of Privacy Claim.

Plaintiffs do not dispute that their invasion of privacy claims require "a highly offensive intrusion." *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *6 (N.D. Cal. 2023); *see* Opp. 19. Yet Plaintiffs maintain that whether they had alleged facts meeting that bar categorically "cannot be resolved at the pleading stage." Opp. 18 (citing *In re Facebook*, 956 F.3d at 606). But courts have rejected exactly that argument, explaining that *In re Facebook* "made a case-specific determination, not a generalized holding that this issue can never be resolved at the pleadings stage." *Williams*, 2023 WL 5352896, at *5. Nor do Plaintiffs fare any better with their assertion that "Plaintiffs plausibly allege Carnival's conduct is highly offensive to a reasonable person." Opp. 19. As Carnival has already explained, courts have held that even "disclosure of personal information, including social security numbers" is insufficient to state a claim. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). And there can be no dispute that the information at issue here is nowhere near as sensitive. Accordingly, courts routinely hold that the use of session replay code cannot sustain a claim for invasion of privacy. *See, e.g.*, *Williams*, 2023 WL 5352896, at *7 (describing session replay code as "a minimal intrusion that was not highly offensive"); *Farst*, 2023 WL 7179807, at *3 ("[A] company's online tracking practices … is not sufficiently offensive, standing alone, for a claim of intrusion upon

---

[4] Plaintiffs do not dispute that, as Carnival explained in its Motion (at 20-21), the crime-tort exception to the Federal Wiretap Act has no application here.

CARNIVAL'S REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT
3:23-CV-00236

seclusion to survive a motion to dismiss"); *Popa*, 426 F. Supp. 3d at 122 ("The act of collecting … keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach."). This court should do the same.

### C.   Plaintiffs Fail to State a CFAA Claim.

1.   *Plaintiffs fail to plead facts showing that Carnival exceeded its authorized access to Plaintiffs' computers.*

Plaintiffs do not dispute that to state a CFAA claim, they must allege that Carnival "obtain[ed] information from particular areas in [Plaintiffs'] computer—such as files, folders, or databases—to which [Carnival's] computer access does not extend." *Van Buren v. United States*, 141 S. Ct. 1648, 1659-60 (2021). Instead, Plaintiffs insist that this occurs anytime a website loads "snippets of JavaScript computer code" in a "website visitor's internet browser" without prior consent. Opp. 21. That argument is astounding in its breadth, as it would criminalize substantially the entire operation of the internet. Almost *every* website loads snippets of JavaScript code in a visitor's browser without their knowledge—much less, their prior consent (which as explained above is not even the case here). This Court's homepage, for instance, loads about a dozen. *See* https://www.casd.uscourts.gov.[5] That Plaintiffs' reading of the statute would produce such an "absurd result[]"—criminalizing the entire internet—is reason enough to reject it. *Sw. Marine Inc. v. Mabus*, 2014 WL 654593, at *7 (S.D. Cal. 2014). For this reason alone, Plaintiffs' CFAA claim fails.

2.   *Plaintiffs fail to plead facts showing that Carnival caused losses of at least $5,000 or created a threat to public safety*

Plaintiffs admit that the "CFAA only covers loss and damage in the form of "technological harms—such as the corruption of files that result from the typical consequences of hacking." Opp. 23. Yet they maintain that Carnival's supposed "misappropriation" of their personal "information" qualifies as a "technological

---

[5] To see this, navigate to the website, right click the page, and then click "Inspect" or "View Page Source." All items ending with the extension ".js" are JavaScript code.

CARNIVAL'S REPLY ISO MOTION TO DISMISS
FIRST AMENDED COMPLAINT
3:23-cv-00236

harm," insisting that the Supreme Court's "*Van Buren* [decision] did not hold that 'intangible or other privacy harms' … could not result in damage or loss under the CFAA." *Id.* But in fact, that is exactly what *Van Buren* says. As it explains, "[t]he term 'loss'" is "limit[ed]" to "costs caused by harm to computer data, programs, systems, or information services," and as a result is "ill fitted" to intangible harms such as "'misuse' of sensitive information." *Van Buren*, 141 S. Ct. at 1659-60; *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195, n.12 (9th Cir. 2022) (claim that defendant wrongfully accessed data "has not alleged that [the defendant] … caused any such technological harms" (citing *Van Buren*, 141 S. Ct. 1659-60)).[6]

Plaintiffs fare no better in their attempt to base their CFAA claim on "a threat to public health and safety." *See* Opp. 24-25. Indeed, it is not even clear what "threat" Plaintiffs think has been created, much less how Carnival's use of Clarity caused it. Instead, Plaintiffs simply cite a single case which—they say—found "a threat to public safety stemming from, *inter alia*, unauthorized access to computers which contained personally identifiable information." Opp. 25 (citing *Vaquero Energy, Inc. v. Herda*, 2015 WL 5173535, at *8 (E.D. Cal. 2015)). But what Plaintiffs omit (through their use of "*inter alia*") is that the unauthorized access in *Vaquero Energy* risked "caus[ing] a H2S gas release, high pressure steam release, fire, oil spill, or pipeline rupture." 2015 WL 5173535, at *8. Thus, *Vaquero Energy* does not hold (as Plaintiffs suggest) that any access of personal information is itself a public safety threat; rather it simply establishes the (obvious) proposition that a "fire, oil spill, or pipeline rupture" is. What Plaintiffs allege here comes nowhere near that kind of threat. Accordingly, their "threat to public health and safety" argument fails.

### III.   CONCLUSION

The Court should dismiss the FAC with prejudice.

---

[6] Needless to say, the small handful of pre-*Van Buren* district court decisions that Plaintiffs rely on in their Opposition, *see* Opp. 23, no longer reflect the law.

1

2
Dated:          December 20, 2023          ORRICK, HERRINGTON & SUTCLIFFE LLP

3

4
By: */s/ Jacob M. Heath*
Jacob M. Heath

5

6
Attorneys for Defendant Carnival
Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -