JACOB HEATH (STATE BAR NO. 238959)
jheath@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

Attorneys for Defendant
CARNIVAL CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIA PRICE, ERICA MIKULSKY, MARILYN HERNANDEZ, DANIEL RUBRIDGE, and ARIEL OLIVER, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARNIVAL CORPORATION,<br><br>Defendant. | Case No. 3:23-CV-00236-GPC-MSB<br><br>**DEFENDANT CARNIVAL CORPORATION'S ANSWER TO FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Judge:     Hon. Gonzalo P. Curiel |

Defendant Carnival Corporation ("Carnival" or "Defendant"), by and through its undersigned attorneys, for their Answer to Plaintiffs' First Amended Consolidated Class Action Complaint ("FAC"), hereby state as follows:

## ANSWER

Carnival reserves the right to amend this Answer based on information made available through discovery or further investigation.  Unless specifically admitted below, Carnival denies each and every allegation, claim, and prayer for relief contained in the First Amended Consolidated Class Action Complaint.  Additionally, Carnival denies that any of the headings therein state facts or allegations to which a response is required.  To the extent a response is required, Carnival denies any facts set forth in the headings.  Further answering the specific allegations in the First Amended Consolidated Class Action Complaint, the Carnival states:

1.     This is a class action brought against Carnival for wiretapping the electronic communications of visitors to its website, www.carnival.com. Carnival procures third-party vendors, such as Microsoft Corporation, to embed snippets of JavaScript computer code ("Session Replay Code") on Carnival's website, which then deploys on each website visitor's internet browser for the purpose of secretly intercepting and recording the website visitor's electronic communications with the Carnival website, including their mouse movements, clicks, keystrokes (such as text being entered into an information field or text box whether submitted or not), URLs of web pages visited, and/or other electronic communications in real-time ("Website Communications"). Carnival deploys and/or directs third-party vendors (collectively, "Session Replay Providers") to create and deploy the Session Replay Code on Carnival's website.

**RESPONSE:**  Carnival admits that Plaintiffs have filed a class action complaint based on allegations that Carnival engaged in wiretapping the electronic communications of visitors to its website, www.carnival.com, but denies that such a class action complaint will be capable of class certification.  Carnival denies the remainder of allegations in Paragraph 1.

2.     After intercepting and capturing the Website Communications, Carnival and the Session Replay Providers use those Website Communications to recreate website visitors' entire visit to www.carnival.com. Session Replay Providers create a video replay of the user's behavior

on the website and provide it to Carnival for analysis. Both Carnival and the Session Replay Providers access and analyze the video replay of the user's behavior on the website. Carnival's secret deployment of the Session Replay Code results in the electronic equivalent of "looking over the shoulder" of each visitor to the Carnival's website for the entire duration of their website interaction.

**RESPONSE:**  Carnival denies the allegations in Paragraph 2.

3.      As set forth more particularly below, Carnival's conduct violates the federal Wiretap Act, 18 U.S. C. § 2510, *et seq*. ("Wiretap Act"), the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA"), and violates multiple state laws in California, Maryland, Massachusetts, and Pennsylvania.

**RESPONSE:**  Paragraph 3 contains legal conclusions to which no response is required. Insofar as a response is required, Carnival denies the allegations.

4.      Plaintiffs bring this action individually and on behalf of a nationwide class and state subclasses consisting of all persons in California ("California Class"), Maryland ("Maryland Class"), Massachusetts ("Massachusetts Class"), and Pennsylvania ("Pennsylvania Class") (collectively, "Classes") whose Website Communications were intercepted by Carnival and Session Replay Providers through Carnival's procurement, deployment, and use of Session Replay Code embedded on the webpages of www.carnival.com and seek all civil remedies provided under the causes of action, including but not limited to compensatory, statutory, and/or punitive damages, and attorneys' fees and costs.

**RESPONSE:**  Carnival admits that Plaintiffs have filed a class action complaint seeking civil remedies based on allegations that Carnival engaged in wiretapping the electronic communications of visitors to its website, www.carnival.com, but denies that such a class action complaint will be capable of class certification.  Carnival denies any remaining allegations in Paragraph 4.

**PARTIES**

5.      Plaintiff India Price is a citizen of the State of California, and at all times relevant to this action, resided and was domiciled in California. Plaintiff currently resides and is domiciled in

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

California. While on Defendant's website, Price used her mouse to hover and click on certain links and items, and input information about potential trips she was planning. Plaintiff's website communications disclosed details related to, *inter alia*, Plaintiff's location, intent to travel, dates of travel, travel locations as well as other personal data requested to book travel plans, such as passport number, driver's license number, date of birth, home address, phone number, email address, and/or payment information.

**RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 and therefore denies them.

6.      Plaintiff Erica Mikulsky is a citizen of the State of California, and at all times relevant to this action, resided and was domiciled in California. Plaintiff currently resides and is domiciled in California. While on Carnival's website, Plaintiff Mikulsky recalls providing personal information pertaining to booking a cruise, including passport numbers, her children's names, and birthdays. Plaintiff's website communications disclosed details related to, *inter alia*, Plaintiff's location, intent to travel, dates of travel, travel locations as well as other personal data requested to book travel plans, such as passport number, driver's license number, date of birth, home address, phone number, email address, and/or payment information.

**RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and therefore denies them.

7.      Plaintiff Marilyn Hernandez is a citizen of the State of Maryland, and at all times relevant to this action, resided and was domiciled in Maryland. Plaintiff currently resides and is domiciled in Maryland. Plaintiff's website communications disclosed details related to, *inter alia*, Plaintiff's location, intent to travel, dates of travel, travel locations as well as other personal data requested to book travel plans, such as passport number, driver's license number, date of birth, home address, phone number, email address, and/or payment information.

**RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and therefore denies them.

8.      Plaintiff Daniel Rubridge is a citizen of the Commonwealth of Massachusetts, and at all times relevant to this action, resided and was domiciled in Massachusetts. Plaintiff currently

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

resides and is domiciled in Massachusetts. While on Carnival's website, Plaintiff Rubridge recalls requesting and submitting information related to price ranges for specific trips, date ranges for specific trips, and inquiries related to cabin and ship details (including the pricing and size of cabins), amenities, and services. Plaintiff Rubridge did some general browsing during which he believes he provided additional personal information to Carnival, including his name, phone number, email address, trips that interested him, and departing port information.

> **RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.      Plaintiff Ariel Oliver is a citizen of the Commonwealth of Pennsylvania and, at all times relevant to this action, resided and was domiciled in Pennsylvania. Plaintiff currently resides and is domiciled in Pennsylvania. While on Defendant's website, Oliver browsed through cruise packages and researched different destinations, hovering over and clicking on links and items embedded on the website. Plaintiff's website communications disclosed details related to, *inter alia*, Plaintiff's location, intent to travel, dates of travel, travel locations as well as other personal data requested to book travel plans, such as passport number, driver's license number, date of birth, home address, phone number, email address, and/or payment information.

> **RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.      Defendant Carnival Corporation is a corporation organized under the laws of Panama, and its principal place of business is in Miami, Florida. Defendant is a citizen of Florida.

> **RESPONSE:**  Carnival admits that is a corporation organized under the laws of Panama, and that its principal place of business is in Miami, Florida.  Whether Carnival is a citizen of Florida is a legal conclusion to which no response is required, and insofar as a response is required, Carnival denies the allegation.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of each proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

each proposed class, and at least one member of each proposed class, including Plaintiffs, is a citizen of a state different than Defendant.

**RESPONSE:**  The allegations in Paragraph 11 are legal conclusions to which no response is required.  To the extent a response is required, Carnival denies the allegations.

12.    This Court has personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to the Plaintiffs' claims occurred in California. The privacy violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of California, while they were located within California. At all relevant times, Defendant knew that its practices would directly result in collection of information from California citizens while those citizens browse www.carnival.com. Defendant chose to avail itself of the business opportunities of marketing and selling its goods and services in California and collecting real-time data from website visit sessions initiated by California citizens while located in California, and the claims alleged herein arise from those activities.[1]

**RESPONSE:**  Whether the Court has personal jurisdiction over Defendant is a legal conclusion to which no response is required; insofar as a response is required, Carnival denies this allegation.  Carnival lacks knowledge or information sufficient to form a belief as to the truth of where the privacy violations complained of resulted, or that they occurred while individuals were located within California, and therefore denies the allegations. Carnival denies the remaining allegations in Paragraph 12.  Regarding the allegations contained in footnote 1, Carnival admits that it consented and agreed to the transfer of other individual actions filed in different courts but denies that such consent is a concession that this Court has personal jurisdiction.

13.    Carnival also knows that many users visit and interact with Carnival's website while they are physically present in California by the user's IP address (*i.e.*, without requiring the user to manually input an address). This means Carnival is continuously made aware that its website is

---

[1]  Defendant consented and agreed to the transfer of individual actions, originally filed in the districts of Maryland, Massachusetts, and the Western District of Pennsylvania to the Southern District of California, and as such, has conceded that personal jurisdiction in this Court is proper.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1  being visited by people located in California, and that such website visitors are being wiretapped

2  in California and in violation of California statutory and common law as well as federal statutory

3  law.

4        **RESPONSE:**  Paragraph 13 contains legal conclusions to which no response is required.

5        To the extent a response is required, Carnival denies the allegations.

6        14.     Carnival's deliberate and continuous exploitation of the California market further

7  supports personal jurisdiction in California. Carnival generates revenue from California residents and

8  from its seaports located in California and maintains employees in California. Carnival has physical

9  seaports operating from California shores, including ports in San Francisco, California and Long

10  Beach (Los Angeles), California.[2] For the 2024 calendar year, Carnival is currently offering 42

11  different cruise options leaving from a California port, many of which are offered multiple times

12  throughout 2024.[3] The cruise ships leaving California ports each hold between 2,124 and 4,126

13  guests.[4]

14        **RESPONSE:**  Carnival denies that it has engaged in "deliberate and continuous exploitation

15        of the California market."  Whether the Court has personal jurisdiction over Defendant is a

16        legal conclusion to which no response is required; insofar as a response is required, Carnival

17        denies this allegation.  Carnival admits that it generates revenue from California residents,

18        that some of its cruise options in 2024 depart from California, and that it presently maintains

19        a small group of employees in California.  Carnival denies that it owns physical seaports in

20        California, and denies the remaining allegations of Paragraph 14.

21        15.     Carnival is registered to do business in California with a registered agent located at

22  330 N. Brand Blvd., Glendale, California.

23        **RESPONSE:**  Admitted.

24

---

25  [2] https://www.carnival.com/cruise-to.aspx ("Sail To" and "Sail From" ports both offer California options).

26  [3] https://www.carnival.com/cruise-search?pageNumber=6&numadults=2&port=LAX,

27  SFO&dates=012024,022024,032024,042024,052024,062024,072024,082024,092024 ,102024,112024,122024&pagesize=8&sort=fromprice&showBest=true.

28  [4] https://www.carnival.com/cruise-ships/compare-cruise-ships.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

16.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Defendant has also consented to litigation of this consolidated case, which includes Plaintiffs from California, Maryland, Massachusetts, and Pennsylvania, in the Southern District of California.

**RESPONSE:**  Paragraph 16 contains legal conclusions that require no response; insofar as a response is required, Carnival denies the allegations.  Carnival admits that it consented and agreed to transfer of other individual actions filed in different courts, but denies that such consent is a concession that this Court is the proper venue for this action.

## FACTUAL ALLEGATIONS

**A.     Website User and Usage Data Have Immense Economic Value.**

17.     The "world's most valuable resource is no longer oil, but data."[5]

**RESPONSE:**  Paragraph 17 contains a quotation from the publication The Economist, which speaks for itself.  Insofar as a response is required, Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegation and therefore denies it.

18.     Last year, Business News Daily reported that some businesses collect personal data (*i.e.*, gender, web browser cookies, IP addresses, and device IDs), engagement data (*i.e.*, how consumers interact with a business's website, applications, and emails), behavioral data (*i.e.*, customers' purchase histories and product usage information), and attitudinal data (*i.e.*, data on consumer satisfaction) from consumers[6]. This information is valuable to companies because they can use this data to improve customer experiences, refine their marketing strategies, capture data to sell it, and even to secure

---

[5] *The world's most valuable resource is no longer oil, but data*, The Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-  resource-is-no-longer-oil-but-data.

[6] Max Freedman, How Businesses Are Collecting Data (And What They're Doing With It), Business News Daily (Aug. 5, 2022), https://www.businessnewsdaily.com/10625-businesses-collecting-data.html.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1   more sensitive consumer data.[7] There is, however, no limit to what companies can do with this data

2   once they collect it.

3       **RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the

4       truth of the allegations in Paragraph 18 and therefore denies them.

5       19.    In a consumer-driven world, the ability to capture and use customer data to shape

6   products, solutions, and the buying experience is critically important to a business's success.

7   Research shows that organizations who "leverage customer behavior insights outperform peers by

8   85 percent in sales growth and more than 25 percent in gross margin."[8]

9       **RESPONSE:**  Paragraph 19 contains a quotation from a McKinsey publication, which

10      speaks for itself.  Insofar as a response is required, Carnival lacks knowledge or information

11      sufficient to form a belief as to the truth of the allegations and therefore denies them.

12      20.    In 2013, the Organization for Economic Cooperation and Development ("OECD")

13  published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies

14  for Measuring Monetary Value."[9]  In this paper, the OECD measured prices demanded by

15  companies concerning user data derived from "various online data warehouses."[10]

16      **RESPONSE:**  Paragraph 20 contains a quotation from publication by the Organization for

17      Economic Cooperation and Development, which speaks for itself.  Insofar as a response is

18      required, Carnival lacks knowledge or information sufficient to form a belief as to the truth

19      of the allegations and therefore denies them.

20      21.    OECD indicated that "[a]t the time of writing, the following elements of personal data

21  were available for various prices: USD 0.50 cents for an address, USD 2 [$2] for a date of birth, USD

22  8 for a social security number (government ID number), USD 3 for a driver's license number and USD

23  _____

24  [7] *Id.*

25  [8] Brad Brown, Kumar Kanagasabai, Prashant Pant & Goncalo Serpa Pinto, *Capturing value from your customer data*, McKinsey (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data.

26
27  [9] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD Digital Economy Papers, NO. 220 (Apr. 2, 2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf.

28  [10] *Id.* at 25.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

35 for a military record. A combination of address, date of birth, social security number, credit record and military is estimated to cost USD 55."[11]

> **RESPONSE:** Paragraph 21 contains a quotation from a publication by the Organization for Economic Cooperation and Development, which speaks for itself. Insofar as a response is required, Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

**B.    Website Users Have a Reasonable Expectation of Privacy in Their Interactions with Websites.**

22.    Consumers are skeptical and wary about their data being collected. A report released by KPMG shows that "a full 86% of the respondents said they feel a growing concern about data privacy, while 78% expressed fears about the amount of data being collected."[12]

> **RESPONSE:** Paragraph 22 contains a quotation from publication by KPMG, which speaks for itself. Insofar as a response is required, Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

23.    Another recent paper also indicates that most website visitors will assume their detailed interactions with a website will only be used by the website and not be shared with a party they know nothing about.[13] As such, website visitors reasonably expect that their interactions with a website would not be released to third parties unless explicitly stated.[14]

---

[11] OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [$2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record. A combination of address, date of birth, social security number, credit record and military is estimated to cost USD 55."

[12] Lance Whitney, *Data privacy is a growing concern for more consumers*, TechRepublic (Aug. 17, 2021), https://www.techrepublic.com/article/data-privacy-is-a-growing-concern-for-more-consumers/.

[13] [13] *CUJO AI Recent Survey Reveals U.S. Internet Users Expectations and Concerns Towards Privacy and Online Tracking*, CUJO (May 26, 2020), https://www.prnewswire.com/news-releases/cujo-ai-recent-survey-reveals-us-internet-users-expectations-and-concerns-towards-privacy-and-online-tracking-301064970.html.

[14] Frances S. Grodzinsky, Keith W. Miller & Marty J. Wolf, *Session Replay Scripts: A Privacy Analysis*, The Information Society, 38:4, 257, 258 (2022).

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies them.

24.     Privacy polls and studies show that a majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' data.

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and therefore denies them.

25.     A recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[15]

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and therefore denies them.

26.     Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[16]

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and therefore denies them.

27.     Users act consistently with their expectation of privacy. Following a new rollout of the iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85 percent of worldwide users and 94 percent of U.S. users chose not to allow such tracking.[17]

---

[15] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, Consumer Reports (May 11, 2017), https://www.consumerreports.org/ consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety-a3980496907/.

[16] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, Pew Research Center, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-Confused-and-feeling-lack-of-control-over-their-personal-information/.

[17] Margaret Taylor, *How Apple screwed Facebook*, Wired, (May 19, 2021), https://www.wired.co.uk/article/apple-ios14-facebook.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and therefore denies them.

**C.     How Session Replay Code Works.**

28.     Session Replay Code, such as that implemented on www.carnival.com, enables website operators to record, save, and replay website visitors' interactions with a given website. The clandestinely deployed code provides online marketers and website designers with insights into the user experience by recording website visitors "as they click, scroll, type or navigate across different web pages."[18]

**RESPONSE:** Carnival denies the allegations in Paragraph 28.

29.     Unlike other online advertising tools, Session Replay Code allows a website to capture and record nearly every action a website visitor takes while visiting the website, including actions that reveal the visitor's personal or private sensitive data, sometimes even when the visitor does not intend to submit the data to the website operator, or has not finished submitting the data to the website operator.[19] As a result, website visitors "aren't just sharing data with the [web]site they're on . . . but also with an analytics service that may be watching over their shoulder."[20]

**RESPONSE:** Carnival denies the allegations in Paragraph 29.

30.     Session Replay Code works by inserting computer code onto each website user's electronic device and into the various event handling routines that web browsers use to receive input from users, thus intercepting the occurrence of actions the user takes. When a website delivers Session Replay Code to a user's browser on the user's own electronic device, the browser follows the code's instructions by sending responses in the form of "event" data to a designated server. When Carnival deployed the Session Replay Code, the Session Replay Provider's server received the event data

---

[18] Erin Gilliam Haije, *[Updated] Are Session Recording Tools a Risk to Internet Privacy?*, Mopinion (Mar. 7, 2018), https://mopinion.com/are-session-recording-tools-a-risk-to-internet-privacy/.

[19] *Id.*

[20] Eric Ravenscraft, *Almost Every Website You Visit Records Exactly How Your Mouse Moves*, Medium (Feb. 5, 2020), https://onezero.medium.com/almost-every-website-you-visit-records-exactly-how-your-mouse-moves-4134cb1cc7a0.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

and thus, the server receiving the event data was controlled by the third-party entity that wrote the Session Replay Code, rather than the owner of the website where the code was installed.

**RESPONSE:** Carnival denies the allegations in Paragraph 30.

31. The types of events captured by Session Replay Code are wide-ranging and encompass virtually every user action, including all mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry (even if deleted), and numerous other forms of a user's navigation and interaction through the website and includes swaths of user data. To permit a reconstruction of a user's visit accurately, the Session Replay Code must be capable of capturing these events at hyper-frequent intervals, often just milliseconds apart. Events are accumulated and transmitted in blocks periodically throughout the duration of the user's website session, rather than after the user's visit to the website is completely finished. Thus, the transmission of a website user's Website Communications to the third-party Session Replay provider, which starts immediately upon the navigation to the website, happens contemporaneously in real-time.

**RESPONSE:** Carnival denies the allegations in Paragraph 31.

32. Unless specifically masked through configurations chosen by the website owner, visible contents of the website are also transmitted to the Session Replay Provider.

**RESPONSE:** Carnival denies the allegations in Paragraph 32.

33. Once the events from a user session have been recorded by Session Replay Code, a website operator can view a visual reenactment of the user's visit through the Session Replay Provider, usually in the form of a video, meaning "[u]nlike typical analytics services that provide aggregate statistics, these scripts are intended for the recording and playback of individual browsing sessions."[21]

**RESPONSE:** Carnival denies the allegations in Paragraph 33.

34. Because Session Replay Code will by default indiscriminately capture the maximum range of user-initiated events and content displayed by the website, researchers have found that a

---

[21] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, Freedom to Tinker (Nov. 15, 2017), https://freedom-to-tinker.com/2017/ 11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

variety of highly sensitive information is captured in event responses from website visitors, including medical conditions, credit card details, and other personal information displayed or entered on webpages.[22]

**RESPONSE:**  Carnival denies the allegations in Paragraph 34.

35.    The data and information intercepted by the Session Replay Code goes well beyond information about the "when" and "how" of the communications (commonly referred to as "record data") and includes the "what" of the communications (*i.e.*, the contents of the communication), including, *inter alia*, Plaintiffs' location, intent to travel, dates of travel, travel locations as well as other personal data requested to book travel plans such as passport number, driver's license number, date of birth, home address, phone number, email address and/or payment information.

**RESPONSE:**  Carnival denies the allegations in Paragraph 35.

36.    Most alarming, Session Replay Code captures data that the user did not even intentionally transmit to a website during a visit, and then makes that data available to website owners when they access the session replay through the Session Replay Provider. For example, if a user writes information into a text form field, but then chooses not to click a "submit" or "enter" button on the website, the Session Replay Code nevertheless causes the non-submitted text to be sent to the designated event-response-receiving server before the user deletes the text or leaves the page. This information is then viewable to the website owner, including when accessing the session replay through the Session Replay Provider.

**RESPONSE:**  Carnival denies the allegations in Paragraph 36.

37.    Session Replay Code does not necessarily anonymize user sessions, either, and upon information and belief Carnival's use of the code is no different.

**RESPONSE:**  Carnival denies the allegations in Paragraph 37.

38.    First, if a user's entry of personally identifying information is captured in an event response, that data will become known and visible to both the Session Replay Provider and the website owner.

---

[22] *Id.*

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

**RESPONSE:**  Carnival denies the allegations in Paragraph 38.

39.    Second, if a website displays user account information to a logged-in user, that content will be captured by Session Replay Code.

**RESPONSE:**  Carnival denies the allegations in Paragraph 39.

40.    Third, some Session Replay Providers explicitly offer website owners cookie functionality that permits linking a session to an identified user, who may be personally identified if the website owner has associated the user with an email address or username.[23]

**RESPONSE:**  Carnival denies the allegations in Paragraph 40.

41.    Session Replay Providers often create "fingerprints" that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information. The resulting fingerprint, which is often unique to a user and rarely changes, are collected across all sites that the Session Replay Provider monitors.

**RESPONSE:**  Carnival denies the allegations in Paragraph 41.

42.    When a user eventually identifies themselves to one of these websites (such as by filling in a form), the website owner associates the fingerprint with the user identity and can then back-reference all of that user's web browsing across other websites previously visited, including on websites where the user had intended to remain anonymous—even if the user explicitly indicated that they would like to remain anonymous by enabling private browsing.

**RESPONSE:**  Carnival denies the allegations in Paragraph 42.

43.    In addition to the privacy invasions caused by the diversion of user communications with websites to third-party Session Replay Providers, Session Replay Code also exposes website visitors to identity theft, online scams, and other privacy threats. [24] Indeed, "[t]he more copies of sensitive information that exist, the broader the attack surface, and when data is being collected [ ] it

---

[23] *Id.*; *see also FS.identify – Identifying users*, FullStory, https://help.fullstory.com/ hc/en-us/articles/360020828113, (last visited Oct. 6, 2023).

[24] Lily Hay Newman, *Covert 'Replay Sessions' Have Been harvesting Passwords by Mistake*, WIRED (Feb. 26, 2018), https://www.wired.com/story/covert-replay-sessions-harvesting-passwords/.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

may not be stored properly or have standard protections" increasing "the overall risk that data will someday publicly leak or be breached."[25]

**RESPONSE:**  Carnival denies the allegations in Paragraph 44.

44.    The privacy concerns arising from Session Replay Code are not theoretical or imagined. The CEO and founder of LOKKER, a provider of data privacy and compliance solutions has said "[consumers] should be concerned" about the use of Session Replay Code because "they won't know these tools are operating 'behind the scenes' of their site visit" and "even if the company disclosed that they are using these tools, consumers wouldn't likely be able to opt-out and still use the site."[26]

**RESPONSE:**   Paragraph 44 contains a quotation from CEO and founder of LOKKER contained in a WIRED article, which speaks for itself.  Insofar as a response is required, Carnival denies the allegations in Paragraph 44.

45.    Indeed, the news is replete with examples of the dangers of Session Replay Code. For example, in 2019, the App Analyst, a mobile expert who writes about his analyses of popular apps, found that Air Canada's iPhone app wasn't properly masking the session replays they were sent, exposing unencrypted credit card data and password information.[27] This discovery was made just weeks after Air Canada said its app had a data breach, exposing 20,000 profiles.[28]

**RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 and therefore denies them.

46.    Further, multiple companies have removed Session Replay Code from their websites once it was discovered the Session Replay Code captured highly sensitive information. For

---

[25] Lily Hay Newman, *Covert 'Replay Sessions' Have Been harvesting Passwords by Mistake*, WIRED (Feb. 26, 2018), https://www.wired.com/story/covert-replay-sessions-harvesting-passwords/.

[26] Mark Huffner, *Is 'session replay software' a privacy threat or just improving your web experience*, Consumer Affairs (Oct. 25, 2022), https://www.consumeraffairs.com /news/is-session-replay-software-a-privacy-threat-or-just-improving-your-web-experience-102522.html.

[27] Zach Whittaker, *Many Popular iPhone Apps Secretly Record Your Screen Without Asking*, TechCrunch (Feb. 6, 2019), https://techcrunch.com/2019/02/06/iphone-session-replay-screenshots/.

[28] *Id.*

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

instance, in 2017, Walgreens stopped sharing data with a Session Replay Provider after it was discovered that the Session Replay provider gained access to website visitors' sensitive information.[29] Indeed, despite Walgreens' extensive use of manual redactions for displayed and inputted data, the Session Replay Provider still gained access to full names of website visitors, their medical conditions, and their prescriptions.[30]

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 and therefore denies them.

47.     Following the Walgreens incident, Bonobos, a men's clothing retailer, announced that it was eliminating data sharing with a Session Replay Provider after it was discovered that the Session Replay Provider captured credit card details, including the cardholder's name and billing address, and the card's number, expiration, and security code from the Bonobos' website.[31]

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 and therefore denies them.

48.     Recognizing the privacy concerns posed by Session Replay Code, in 2019 Apple required app developers to remove or properly disclose the use of analytics code that allow app developers to record how a user interacts with their iPhone apps or face immediate removal from the app store.[32] In announcing this decision, Apple stated: "Protecting user privacy is paramount in the Apple ecosystem. Our App Store Review Guidelines require that apps request explicit user consent and provide a clear visual indication when recording, logging, or otherwise making a record of user activity."[33]

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore denies them.

---

[29] Nitasha Tiku, *The Dark Side of 'Replay Sessions' That Record Your Every Move Online*, WIRED (Nov. 16, 2017), https://www.wired.com/story/the-dark-side-of-replay-sessions-that-record-your-every-move-online/.

[30] Englehardt, *supra* note 21.

[31] Tiku, *supra* note 29.

[32] Zack Whittaker, *Apple Tells App Developers to Disclose or Remove Screen Recording Code*, TechCrunch (Feb. 7, 2019), https://techcrunch.com/2019/02/07/ apple-glassbox-apps/.

[33] *Id.*

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

**D.    Carnival Secretly Wiretaps its Website Visitors' Electronic Communications.**

49.    Carnival operates the website www.carnival.com. Carnival is a cruise line that offers cruise vacations throughout the United States and internationally.

**RESPONSE:**  Admitted.

50.    However, unbeknownst to the millions of individuals perusing Carnival's products and services online, Carnival intentionally procures and embeds Session Replay Code from various Session Replay Providers on its website; the Session Replay Code then deploys on website users' browsers and runs in order to track and analyze website user interactions with www.carnival.com.

**RESPONSE:**  Carnival denies the allegations in Paragraph 50.

51.    Microsoft is one such Session Replay Provider from which Carnival procures Session Replay Code.

**RESPONSE:**  Carnival denies the allegations in Paragraph 51.

52.    Microsoft is the owner and operator of Session Replay Code called Clarity, which provides basic information about website user sessions, interactions, and engagement, and breaks down users by device type, country, and other dimensions.[34]

**RESPONSE:**  Carnival denies the allegations in Paragraph 52.

53.    Clarity captures a user's interactions with a website, logging every website user's mouse movements and clicks, scrolling window resizing, user inputs, and more.[35] Indeed, Clarity organizes the information it captures into over 30 different categories including: the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the

---

[34] Jono Alderson, *An Introduction to Microsoft Clarity*, Yoast, https://yoast.com/introduction-microsoft-clarity/#h-what-is-microsoft-clarity ,(last visited Oct. 6, 2023).

[35] *Clarity Data Collection*, Microsoft, https://docs.microsoft.com/en-us/clarity/clarity-data, (last visited Oct. 6, 2023).

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1   user on the website, and how far down a webpage a user scrolls.[36] Clarity even provides a specific user

2   ID to each website visitor so their website use and interactions can be monitored over time.[37]

3        **RESPONSE:**  Carnival denies the allegations in Paragraph 53.

4        54.    The information collected and recorded by Clarity is then available to play back

5   users' entire journey through a website, showing how they interacted with site navigation, calls to

6   action, search features, and other on-page elements.[38] Put differently, the information Clarity

7   captures translates into a simulation video of how a user interacts with a website.

8        **RESPONSE:**  Carnival denies the allegations in Paragraph 54.

9        55.    Clarity also uses the information captured to create detailed heatmaps of a website

10  that provide information about which elements of a website have high user engagement, how far

11  website users scrolled on the website, and the total clicks within a given area on the website.[39]

12       **RESPONSE:**  Carnival denies the allegations in Paragraph 55.

13       56.    Clarity offers websites three standard approaches when it comes to masking sensitive

14  information collected from a user's interactions with a website— strict (all text entered by a user is

15  purportedly masked), balanced (sensitive text entered into certain specifically pre-coded fields, such

16  as passwords, and credit card information, is masked), and relaxed (no text entered by a user is

17  masked).[40] When Clarity is set to "relaxed," whatever information a user enters into the field on a

18  website is available for review in session recordings.[41] Additionally, Clarity enables websites to

19

20

21

22  _____

23  [36] *Filters Overview*, Microsoft (Jul. 26, 2022), https://docs.microsoft.com/en-us/clarity/clarity-filters.

    [37] *Id.*

24  [38] Roger Montti, *Microsoft Clarity Analytics: Everything You Need to Know*, SEJ (Jan. 19, 2022),

25  https://www.searchenginejournal.com/microsoft-clarity-analytics-overview/419311/#close.

    [39] Haley Walden, *What is Microsoft Clarity? (& How Can it Improve SEO?)*, Elegant Themes

26  (Jun. 12, 2022), https://www.elegantthemes.com/blog/wordpress/microsoft-clarity-improve-seo.

27  [40] Microsoft Clarity, An Essential Part of Customer Experience Optimization, TechAir (Aug. 17,
    2022), https://privacy.microsoft.com/en-US/privacystatement.

28  [41] *Id.*

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

select specific elements and content to mask or unmask, customizing the standard masking approaches.[42]

**RESPONSE:**  Carnival denies the allegations in Paragraph 56.

57.     However, even when a website operator selects the "strict" and "balanced" settings, Clarity nevertheless collects text entered by users, including text containing sensitive information.

**RESPONSE:**  Carnival denies the allegations in Paragraph 57.

58.     As such, Clarity collects highly personal information and substantive communications that can be tied directly to a website user's identity as it monitors, records, and collects a website user's every move.

**RESPONSE:**  Carnival denies the allegations in Paragraph 58.

59.     In order for Clarity to capture website visitors' interactions with a website, Clarity's JavaScript is embedded in the website, either by directly hard-coding the code on the website or through a third-party platform, such as Google Tag Manager.[43] Clarity is embedded in a website by adding its JavaScript code into the HyperText Markup Language (HTML) used on the website. As with all HTML code, Clarity is not visible to a user who is navigating a webpage through a standard browser's default view because by design a browser interprets HTML, without showing it, in order to render a more user-friendly display that is the designer's intended presentation of the website to a visitor.

**RESPONSE:**  Carnival denies the allegations in Paragraph 59.

60.     Clarity is identifiable only through the use of advanced technical tools that show underlying HTML, such as "developer tools." Developer tools are intended for website programmers, and are generally not meaningful or comprehensible to those without a technical background in web development or computer science.

**RESPONSE:**  Carnival denies the allegations in Paragraph 60.

---

[42] Masking Content, Microsoft (Jul. 18, 2022), https://docs.microsoft.com/en-us/clarity/clarity-masking.

[43] *Id.*

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

61.     Once Clarity's JavaScript is installed on a website, Clarity begins collecting website users' interactions.[44] For website users who visit a website after Clarity has been installed, the wiretapping commences immediately on the visitor's web browser when the visitor loads the website in their browser. Thus, the wiretapping occurs the moment a website visitor interacts with Defendant's website, providing no time to review any purported disclosures or privacy policy, if any exist, before wiretapping occurs and continuing through the entire time the visitor is on the site. For website users who visit a website after Clarity has been installed, the wiretapping commences immediately on the visitor's web browser when the visitor loads the website in their browser. Thus, the wiretapping occurs the moment a website visitor interacts with Defendant's website, providing no time to review any purported disclosures or privacy policy, if any exist, before wiretapping occurs and continuing through the entire time the visitor is on the site.

**RESPONSE:**  Carnival denies the allegations in Paragraph 61.

62.     Data collected by Clarity is then stored in the Microsoft Azure cloud service, and Microsoft has access to that information and can use that information to recreate a website users' session via a video playback.[45]

**RESPONSE:**  Carnival denies the allegations in Paragraph 62.

63.     Upon information and belief, Carnival also procures Session Replay Code from ContentSquare, which also begins wiretapping website users the moment they interact with Defendant's website.[46]

**RESPONSE:**  Carnival denies the allegations in Paragraph 63.

64.     Carnival's procurement and use of Microsoft Clarity's and ContentSquare's Session Replay Code, and procurement and use of other Session Replay Code through various Session Replay Providers, is a wiretap in violation of the Electronic Communications Privacy Act, § 2510,

---

[44] *Frequently Asked Questions*, Microsoft, https://docs.microsoft.com/en-us/clarity/faq, (last visited Oct. 6, 2023).

[45] *Id.*

[46] https://contentsquare.com/product/capabilities/session-replay/.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1  *et seq.,* and the statutory and common laws of California, Maryland, Massachusetts, and

2  Pennsylvania.

3  **RESPONSE:**  Paragraph 64 contains a legal conclusion to which no response is required.

4  Insofar as a response is necessary, Carnival denies the allegations.

5  **E.    Plaintiffs' and Class Members' Experience.**

6  65.    Plaintiffs visited www.carnival.com and certain of its subpages on their computers

7  and/or smartphones while in their home states or commonwealths.

8  **RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the

9  truth of the allegations in Paragraph 65 and therefore denies them.

10  66.    While visiting Carnival's website, Plaintiffs fell victim to Defendant's unlawful

11  monitoring,    recording,    and    collection    of    Plaintiffs'    Website    Communications    with

12  www.carnival.com.

13  **RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the

14  truth of the remaining allegations in Paragraph 66 and therefore denies them.

15  67.    Unknown to Plaintiffs, Carnival procures and embeds Session Replay Code on its

16  website.

17  **RESPONSE:**  Carnival denies the allegations in Paragraph 67.

18  68.    During visits by Plaintiffs to www.carnival.com and its subpages, Plaintiffs browsed

19  for cruise packages and different destinations. Plaintiffs communicated with Carnival's website by

20  using their mouse to hover and click on certain links and items, and inputting personal information

21  and information about potential trips they were researching or planning. All of this information – both

22  record data and the content of each Plaintiff's Website Communications -- was intercepted by the

23  Session Replay Code and sent to the Session Replay Provider during those visits.

24  **RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief as to the

25  truth of the allegations in Paragraph 68 and therefore denies them.

26  69.    The Session Replay Code immediately and instantaneously captured Plaintiffs'

27  Website Communications for the entire duration of their visits. Indeed, through Carnival's

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1   deployment of Session Replay Code, Plaintiffs' Website Communications were automatically and
2   secretly intercepted while using Carnival's website.

3       **RESPONSE:** Carnival denies the allegations in Paragraph 69.

4       70.     Further, without their consent, Carnival procured Session Replay Providers and
5   deployed Session Replay Code to obtain certain information about users' devices and browsers and
6   create unique IDs and profiles for them. Plaintiffs did not provide, and could not have provided,
7   Carnival with consent to use Session Replay Code and Session Replay Providers to track their
8   website sessions because, for example, Carnival's website does not put Plaintiffs on notice of or
9   disclose, in any way, its use of Session Replay Code or Session Replay Providers. Additionally,
10  website users can interact with Carnival's website without ever reviewing or agreeing to the terms
11  of any purported privacy policy Carnival may have.

12      **RESPONSE:** Carnival denies the allegations in Paragraph 70.

13      71.     Session Replay Code operates in the same manner for all putative Class members.

14      **RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the
15      truth of the allegations in Paragraph 71 and therefore denies them.

16      72.     Like Plaintiffs, each Class member visited www.carnival.com and its subpages with
17  Session Replay Code embedded in it, and that Session Replay Code intercepted the Class members'
18  Website Communications with www.carnival.com by sending hyper-frequent logs of those
19  communications to Carnival and/or Session Replay Providers.

20      **RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the
21      truth of the allegations in Paragraph 72 and therefore denies them.

22      73.     Even if Carnival masks certain elements when it configured the settings of the
23  Session Replay Code embedded in its website, any operational iteration of the Session Replay Code
24  will, by its very nature and purpose, intercept the contents of communications between the
25  website's visitors and the website owner.

26      **RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the
27      truth of the allegations in Paragraph 73 and therefore denies them.

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

74. For example, even with heightened masking enabled, Carnival and/or Session Replay Providers will still learn through the intercepted data exactly which pages a user navigates to, how the user moves through the page (such as which areas the user zooms in on or interacted with), and additional substantive information.

**RESPONSE:** Carnival lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and therefore denies them.

## **CLASS ACTION ALLEGATIONS**

75. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class and State Subclasses:

*Nationwide Class*

All natural persons in the United States whose Website Communications were captured in the United States through the use of Session Replay Code embedded in www.carnival.com.

*California Class*

All natural persons in California whose Website Communications were captured in California through the use of Session Replay Code embedded in www.carnival.com.

*Maryland Class*

All natural persons in Maryland whose Website Communications were captured in Maryland through the use of Session Replay Code embedded in www.carnival.com.

*Massachusetts Class*

All natural persons in Massachusetts whose Website Communications were captured in Massachusetts through the use of Session Replay Code embedded in www.carnival.com.

*Pennsylvania Class*

All natural persons in Pennsylvania whose Website Communications were captured in Pennsylvania through the use of Session Replay Code embedded in www.carnival.com.

**RESPONSE:** Paragraph 75 contains legal conclusions to which no response is required. Insofar as a response is required, Carnival admits that Plaintiffs purport to bring a class action on behalf of a nationwide and several state-specific classes but denies the remaining allegations of the Paragraph.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

76.     Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from the Classes, the judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

**RESPONSE:**  Paragraph 76 contains legal conclusions to which no response is required. Insofar as a response is required, Carnival admits that Plaintiffs purport to bring a class action on behalf of a nationwide and several state-specific classes but denies the remaining allegations of the Paragraph.

77.     **Numerosity:** The members of each Class are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members and their identities may be obtained from the books and records of Carnival or the Session Replay Providers.

**RESPONSE:**  Paragraph 77 contains legal conclusions to which no response is required. Insofar as a response is required, Carnival denies the allegations.

78.     **Commonality:** This action involves questions of law and fact that are common to members of all Classes. Such common questions include, but are not limited to: (a) whether Defendant procures Session Replay Providers to intercept Carnival's website visitors' Website Communications; (b) whether Carnival intentionally discloses the intercepted Website Communications of its website users; (c) whether Carnival acquires the contents of website users' Website Communications without their consent; (d) whether Defendant's conduct violates the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*; and (e) whether Plaintiffs and Class members are entitled to equitable relief. Additionally, there are questions of law and fact that are common to members of each Class, including whether Defendant's conduct respectively violates the Wiretap Act and the statutory and common laws of California, Maryland, Massachusetts, and Pennsylvania, as alleged *infra*.

**RESPONSE:**  Paragraph 78 contains legal conclusions to which no response is required. Insofar as a response is required, Carnival denies the allegations.

79.     **Typicality:** Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above. For instance, Plaintiffs and all Class members had their

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1    communications intercepted in violation of the law and their right to privacy. This uniform injury

2    and the legal theories that underpin recovery make the claims of Plaintiffs and the Class members

3    typical of one another.

4         **RESPONSE:**  Paragraph 79 contains legal conclusions to which no response is required.

5         Insofar as a response is required, Carnival denies the allegations.

6         80.    **Adequacy of Representation:** Plaintiffs have and will continue to represent and

7    protect the interests of the Classes fairly and adequately. Plaintiffs have retained competent

8    counsel experienced in complex litigation and class actions, including litigation to remedy privacy

9    violations. Plaintiffs have no interests that are antagonistic to the interests of other Class members,

10   and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to

11   vigorously prosecuting this action on behalf of Class members, and they have the resources to do

12   so. Neither Plaintiffs nor their counsel have any interests adverse to the interests of other Class

13   members.

14        **RESPONSE:**  Paragraph 80 contains legal conclusions to which no response is required.

15        Insofar as a response is required, Carnival denies the allegations.

16        81.    **Superiority:** This class action is appropriate for certification because class

17   proceedings are superior to other available methods for the fair and efficient adjudication of this

18   controversy and joinder of all members of the Classes is impracticable. This proposed class action

19   presents fewer management difficulties than individual litigation, and provides the benefits of

20   single adjudication, economies of scale, and comprehensive supervision by a single court. Class

21   treatment will create economies of time, effort, and expense and promote uniform decision-

22   making.

23        **RESPONSE:**  Paragraph 81 contains legal conclusions to which no response is required.

24        Insofar as a response is required, Carnival denies the allegations.

25        82.    **Predominance:** Common questions of law and fact predominate over any

26   questions affecting only individual Class members. Similar or identical violations, business

27   practices, and injuries are involved. Individual questions, if any, pale by comparison, in both

28   quality and quantity, to the numerous common questions that dominate this action. For example,

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1   Defendant's liability and the fact of damages is common to Plaintiffs and members of each Class.
2   If Defendant intercepted Plaintiffs' and Class members' Website Communications, then Plaintiffs
3   and each Class member suffered damages by that conduct.

4   **RESPONSE:**  Paragraph 82 contains legal conclusions to which no response is required.
5   Insofar as a response is required, Carnival denies the allegations.

6   83.   **Ascertainability:** Members of the Classes are ascertainable. Class membership is
7   defined using objective criteria and Class members may be readily identified through Carnival's
8   books and records or the Session Replay Providers' books and records.

9   **RESPONSE:**  Paragraph 83 contains legal conclusions to which no response is required.
10  Insofar as a response is required, Carnival denies the allegations.

11  <u>**COUNT I**</u>

12  **VIOLATION OF FEDERAL WIRETAP ACT**

13  **18 U.S.C. § 2510, *et. seq*.**

14  **(on behalf of the Nationwide Class)**

15  84.   Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

16  **RESPONSE:**  Carnival incorporates is responses to the preceding paragraphs as if fully
17  set forth herein.

18  85.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

19  **RESPONSE:**  Carnival admits that Plaintiffs bring this claim individually and on behalf
20  of the purported Nationwide Class but denies that any such class will be capable of
21  certification.

22  86.   The Wiretap Act, as amended by the Electronic Communications and Privacy Act
23  of 1986, prohibits the intentional interception or attempted interception of any wire, oral, or
24  electronic communication. 18 U.S.C. § 2511(1)(a).

25  **RESPONSE:**  Paragraph 86 contains a legal conclusion to which no response is required.
26  Insofar as a response is necessary, Carnival denies the allegations.

27  87.   The Wiretap Act further provides that any person who:

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

(c)      intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d)      intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

Shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(c) & (d).

**RESPONSE:** Paragraph 87 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that quoted portions of Paragraph 87 appear in the referenced statute, 18 U.S.C. § 2511(1)(c) & (d).  Carnival denies all other allegations in Paragraph 87.

88.      The transmission of Plaintiffs' and the Class members' Website Communications violates the Wiretap Act.

**RESPONSE:** Paragraph 88 contains a legal conclusion to which no response is required. To the extent a response is required, Carnival denies the allegations.

89.      The transmission from Plaintiffs and the Class members to Defendant, and any deployed third-party Session Replay Provider, through Defendant's website are communications pursuant to 18 U.S.C. § 2510(12). "Electronic communication" means *any communication* made in whole or in part through the use of facilities for the transmission of communications by the signs, signals, writing or data between the point of origin and the point of reception. *Id.*

**RESPONSE:** Paragraph 89 contains a legal conclusion to which no response is required. To the extent a response is required, Carnival denies the allegations.

90.      "Interception" means "the acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents... include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C.§ 2510(4), (8). Both Carnival and the Session Replay Providers acquired the contents of Plaintiffs' and the Class Members' Website Communications.

1   **RESPONSE:**  Paragraph 90 contains legal conclusions to which no response is required.

2   To the extent a response is required, Carnival admits that quoted portions of Paragraph 90

3   appear in the referenced statute, 18 U.S.C.§ 2510(4) & (8).  Carnival denies all other

4   allegations in Paragraph 90.

5   91.   "Content" is broadly defined and when used with respect to any wire, oral, or

6   electronic communication, includes any information concerning the substance, purport, or meaning

7   of that communication. 18 U.S.C.§ 2510(8). Plaintiffs' and the Class Members' URLs, web page

8   address information, mouse clicks and movements, scrolling, zooms (out or in), and text submissions

9   (both partial and complete), including search terms or similar communications, were all collected by

10  the Session Replay Code Defendant deployed on its website. These are contents.

11  **RESPONSE:**  Paragraph 91 contains a legal conclusion to which no response is required.

12  To the extent a response is required, Carnival denies the allegations.

13  92.   "Intercepting device" or the "Electronic, mechanical or other device" means any

14  device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or

15  oral communication. U.S.C.§ 2510(5). Here, Plaintiffs' and the Class Members' browsers and

16  computing devices and Defendant's webservers, website, and the Session Replay Code Defendant

17  deployed are all "devices" for the purposes of the Wiretap Act.

18  **RESPONSE:**  Paragraph 92 contains a legal conclusion to which no response is required.

19  To the extent a response is required, Carnival denies the allegations.

20  93.   By deploying and embedding the Session Replay Code on Defendant's website,

21  Defendant intentionally violated the Wiretap Act, through its interception, attempt at interception,

22  and its procurement of Session Replay Providers to intercept the content of Plaintiffs' and the

23  Class Members' Website Communications.

24  **RESPONSE:**  Paragraph 93 contains legal conclusions to which no response is required.

25  Insofar as a response is necessary, Carnival denies the allegations.

26  94.   Defendant also willfully used or attempted to use the contents of Plaintiffs' and the

27  Class members' electronic communications, knowing that the information was obtained through

28  unlawful interception and in violation of 18 U.S.C. § 2511(1)(d). Defendant's use of Plaintiffs'

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

and the Class Members' data and information for advertising, revenue generating benefits, and other unknown purposes, in the absence of express written consent, is intentionally criminal and tortious where the conduct violates state law, including but not limited to an unlawful invasion of privacy.

**RESPONSE:**  Paragraph 94 contains legal conclusions to which no response is required. Insofar as a response is necessary, Carnival denies the allegations.

95.    Without Plaintiffs' and Class members' knowledge or consent, Carnival intercepted and procured Session Replay Providers, including Microsoft Clarity, and more recently Content Square, to intercept the contents of their electronic communications when they navigated to the Carnival website.

**RESPONSE:**  Carnival denies the allegations in Paragraph 95.

96.    Carnival could have readily disclosed its use of Session Replay Code to Plaintiffs' and Class Members' and obtained their consent. Instead, Carnival secretly deployed the code and deceived users.

**RESPONSE:**  Carnival denies the allegations in Paragraph 96.

97.    Carnival intentionally used technology—the Session Replay Code—as a means of intercepting and acquiring the contents of Plaintiffs' and Class members' electronic communications. This violated the Wiretap Act in three primary ways. First, Session Replay Code captured and disclosed partial or unintentional text submissions to Defendant's website. These included communications Plaintiffs and the Class members did not intend to send to Carnival or anyone. Second, by deploying the Session Replay Code, Carnival also procured another, the Session Replay Providers, to intercept the contents of Plaintiffs' and the Class Members' Website Communications (both those intended for Carnival and not intended for Carnival) and disclosed those communications to unintended recipients to the communications (i.e., the third-party Session Replay Providers). Third, Carnival used the contents of Plaintiffs' and the Class members' Website Communications after they were unlawfully intercepted, in violation of 18 U.S.C. § 2511(1), by third party Session Replay Providers for commercial gain. See 18 U.S.C. § 2511(1)(d).

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

**RESPONSE:**  Paragraph 97 contains legal conclusions to which no response is required. Insofar as a response is necessary, Carnival denies the allegations.

98.      No party to the communication or consent exception applies to Defendant because Defendant's conduct falls outside the scope of these exceptions and the crime-tort exception to the exception applies. See 18 U.S.C. § 2511(2)(d). That Section states:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

**RESPONSE:**  Paragraph 98 contains legal conclusions to which no response is required. Insofar as a response is necessary, Carnival admits that quoted portions of Paragraph 98 appear in the referenced statute, 18 U.S.C. § 2511(2)(d), and denies all other allegations.

99.      Criminal or tortious purposes include invading privacy, committing unfair business practices, committing or intent to commit trespass, or violating state computer crime laws. Defendant clearly had a criminal or tortious purpose for secretly installing and recording website users with the Session Replay Code. This Complaint asserts state law claims for invasion of privacy. Additionally, Plaintiffs assert Defendant violated the CFAA and each of the states the Plaintiffs are from have computer crime laws: California, Cal. Penal Code § 502, Maryland, Md. Stat. Crim. Law § 7-302, Massachusetts, Mass. Gen. Laws ch. 266 § 33A, ch. 266 § 120F, and Pennsylvania, 18 Pa. C.S.A. §§ 7601 *et seq,* which Defendant also intended to violate, and did violate.

**RESPONSE:**  Carnival admits that Plaintiffs' complaint alleges claims for invasion of privacy as well as the CFAA and certain state laws.  Carnival denies the remaining allegations in Paragraph 99.

100.      Carnival's primary purpose for deploying Session Replay Code was to secretly, and without permission or consent, collect swaths of data from website users. Defendant could have easily structured its website to obtain users' consent prior to intercepting their communications, but instead, chose to use a surreptitious tracking device. The data the Session Replay Code collected from users was all encompassing, including information that users never intended to send to website owners and

1    certainly did not intend to send to third party Session Replay Providers. This satisfies an intent to

2    invade users' privacy and also an intent to violate state computer crime laws, which generally prohibit

3    unauthorized access to computer data, systems, and networks.

4        **RESPONSE:** Paragraph 100 contains legal conclusions to which no response is required.

5        Insofar as a response is necessary, Carnival denies the allegations.

6        101.    Carnival's interception of Plaintiffs' and the Class Members' data, and procurement

7    of Session Replay Providers who also intercepted Plaintiffs' and the Class Members' data violated

8    the Wiretap Act. Carnival's subsequent use of data, in a manner for which it lacked permission,

9    namely associating the data with users' preexisting online activity and using it to advertise,

10   including for direct targeted advertisements based on Plaintiffs and Class Members, violated

11   Section 2511(1)(d), a distinct violation of the Wiretap Act, and it and of itself satisfies Section

12   2511(2)(d)'s unlawful purpose exception.

13       **RESPONSE:** Paragraph 101 contains legal conclusions to which no response is required.

14       Insofar as a response is necessary, Carnival denies the allegations.

15       102.    Pursuant to 18 U.S.C. § 2511(5)(b), for violations of the Wiretap Act, the Court

16   "may use any means within its authority to enforce an injunction issued under paragraph (ii)(A)

17   and shall impose a civil fine of not less than $500 for each violation of the injunction. Additionally,

18   18 U.S.C. § 2520 provides that any person whose wire, oral or electronic communication is

19   intercepted, disclosed or intentionally used in violation of Chapter 119, may recover from the

20   person or entity that engaged in the violation in a civil action.

21       **RESPONSE:** Paragraph 102 contains legal conclusions to which no response is required.

22       To the extent a response is required, Carnival admits that quoted portions of Paragraph 102

23       appear in the referenced statute, 18 U.S.C. § 2511(5)(b).   Carnival denies all other

24       allegations in Paragraph 102.

25       103.    Plaintiffs and Class members are persons whose electronic communications were

26   intercepted within the meaning of Section 2520. As such, they are entitled to preliminary, equitable

27   and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 per day

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1   for each day of violation, actual damages, punitive damages, and reasonable attorneys' fees and

2   costs of suit.

3       **RESPONSE:**  Paragraph 103 contains legal conclusions to which no response is required.

4       Insofar as a response is necessary, Carnival denies the allegations.

5                                    <u>**COUNT II**</u>

6           <u>**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA)**</u>

7                        <u>**18 U.S.C. § 1030, *et seq*.**</u>
                         <u>**(On behalf Nationwide Class)**</u>

8       104.   Plaintiffs, individually and on behalf of a Nationwide Class, repeat and reallege

9   each and every allegation contained above as if fully alleged herein.

10      **RESPONSE:**  Paragraph 104 contains allegations related to Plaintiffs' CFAA claim to

11          which no response is necessary, because it has been dismissed from the case (ECF 29).

12          Insofar as a response is necessary, Carnival incorporates is responses to the preceding

13          allegations as if fully set forth herein.

14      105.   The Plaintiffs' and the Class's computers and/or mobile devices are, and at all

15   relevant times have been, used for interstate communication and commerce, and are therefore

16   "protected computers" under 18 U.S.C. § 1030(e)(2)(B).

17      **RESPONSE:**  Paragraph 105 contains allegations related to Plaintiffs' CFAA claim to

18          which no response is necessary, because it has been dismissed from the case (ECF 29).

19          Insofar as a response is necessary, Carnival states that Paragraph 105 contains legal

20          conclusions to which no response is required, and if further response is required, Carnival

21          denies the allegations.

22      106.   Defendant exceeded, and continues to exceed, authorized access to the Plaintiffs'

23   and the Class's protected computers and obtained information thereby, in violation of 18 U.S.C. §

24   1030(a)(2), (a)(2)(C).

25      **RESPONSE:**  Paragraph 106 contains allegations related to Plaintiffs' CFAA claim to

26          which no response is necessary, because it has been dismissed from the case (ECF 29).

27          Insofar as a response is necessary, Carnival states that Paragraph 106 contains legal

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1    conclusions to which no response is required, and if further response is required, Carnival

2    denies the allegations.

3    107.    Defendant's conduct caused "loss to 1 or more persons during any 1-year period . . .

4    aggregating at least $5,000 in value" under 18 U.S.C. § 1030(c)(4)(A)(i)(I), *inter alia*, because of

5    the secret transmission of Plaintiffs' and the Class's private and personally identifiable data and

6    content to undisclosed third parties—including the Website visitor's Electronic Communications

7    with the website, including their finger or mouse movements, clicks, keystrokes (such as text being

8    entered into an information field or text box), URLs of web pages visited, and/or other electronic

9    communication which were never intended for public consumption.

10    **RESPONSE:**  Paragraph 107 contains allegations related to Plaintiffs' CFAA claim to

11    which no response is necessary, because it has been dismissed from the case (ECF 29).

12    Insofar as a response is necessary, Carnival states that Paragraph 107 contains legal

13    conclusions to which no response is required, and if further response is required, Carnival

14    admits that quoted portions of Paragraph 107 appear in the referenced statute, 18 U.S.C.

15    § 1030(c)(4)(A)(i)(I) and denies all other allegations in Paragraph 107.

16    108.    Defendant's conduct also constitutes "a threat to public health or safety" under 18

17    U.S.C. § 1030(c)(4)(A)(i)(IV), due to the private and personally identifiable data and content of

18    Plaintiffs and the Class being made available to Defendant, the third-party vendor, and/or other

19    third parties without adequate legal privacy protections.

20    **RESPONSE:**  Paragraph 108 contains allegations related to Plaintiffs' CFAA claim to

21    which no response is necessary, because it has been dismissed from the case (ECF 29).

22    Insofar as a response is necessary, Carnival states that Paragraph 108 contains legal

23    conclusions to which no response is required, and if further response is required, Carnival

24    admits that quoted portions of Paragraph 108 appear in the referenced statute, 18 U.S.C.

25    § 1030(c)(4)(A)(i)(IV) and denies all other allegations in Paragraph 108.

26    109.    Accordingly, Plaintiffs and the Class are entitled to "maintain a civil action against

27    the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18

28    U.S.C. § 1030(g).

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1

2

3

4

5

6

**RESPONSE:**  Paragraph 109 contains allegations related to Plaintiffs' CFAA claim to which no response is necessary, because it has been dismissed from the case (ECF 29). Insofar as a response is necessary, Carnival states that Paragraph 109 contains legal conclusions to which no response is required, and if further response is required, Carnival admits that quoted portions of Paragraph 109 appear in the referenced statute, 18 U.S.C. § 1030(g) and denies all other allegations in Paragraph 109.

7

## COUNT III

8

### VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT

9

### Cal. Penal Code § 630 *et. seq.*

10

### (on behalf of California Class)

11

12

13

14

15

110.   Plaintiffs Price and Mikulsky incorporate the above allegations by reference as if fully set forth herein and bring this count individually and on behalf of the California Class. For the purposes of Count III, "Plaintiffs" refer to Plaintiffs Price and Mikulsky, and "Class" refers to the California Class.

16

17

18

**RESPONSE:**  Carnival incorporates is responses to the preceding allegations by reference as if fully set forth herein.  Carnival admits that for purposes of Count III, "Plaintiffs" refers to Plaintiffs Price and Mikulsky, and "Class" refers to the alleged California Class.

19

20

111.   The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630-638. The Act contains the following statement of purpose:

21

22

23

The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

24

25

26

27

28

**RESPONSE:**  Paragraph 111 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that quoted portions of Paragraph 111 appear in the referenced statute, Cal. Penal Code §§ 630-638.  Carnival denies all other allegations in Paragraph 111.

112.    California Penal Code § 631(a) accordingly provides, in pertinent part:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

**RESPONSE:**  Paragraph 112 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that quoted portions of Paragraph 112 appear in the referenced statute, California Penal Code § 631(a).  Carnival denies all other allegations in Paragraph 112.

113.    At all relevant times, Carnival's business practice of injecting Session Replay Code allowed it to access, intercept, learn the contents of and collect Plaintiffs' and Class members' personally identifiable information and other data.

**RESPONSE:**  Carnival denies the allegations in Paragraph 113.

114.    Plaintiffs, and each Class member, visited and/or interacted with the Carnival website while in California.

**RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 114 and therefore denies them.

115.    Plaintiffs and Class members did not consent to any of Carnival's actions in intercepting, reading, and learning the contents of their communications or disclosing those communications to an unknown third-party.

**RESPONSE:**  Carnival denies the allegations in Paragraph 115.

116.   Carnival's conduct was intentional in that it purposefully installed code which allows it to eavesdrop and learn the content of its users' communications and other browsing activities that would otherwise be unavailable to Carnival without engaging in this practice. Carnival directly participated in the interception, reading, and/or learning of the contents of the communications between Plaintiffs, Class members and California-based web entities.

**RESPONSE:**  Carnival denies the allegations in Paragraph 116.

117.   The information Carnival intercepted and procured third-party Session Replay Providers to intercept while Plaintiffs and Class members were using its website includes personally identifiable information and other highly specific information and communications, including, without limitation, every button, keystroke and link a user taps, whether the user has taken any screenshots, text entries (including passwords and credit card information), and how much time a user spent on the website.

**RESPONSE:**  Carnival denies the allegations in Paragraph 117.

118.   Additionally, Carnival wrongfully, negligently and/or intentionally, aided, abetted, conspired with and/or employed the Session Replay Providers, including but not limited to Microsoft and/or ContentSquare, to unlawfully and without the consent of all parties record, read and/or otherwise gain access to the electronic communication(s) of the Plaintiffs and Class members and/or otherwise violate California law, including California Penal Code § 631(a).

**RESPONSE:**  Paragraph 118 contains legal conclusions to which no response is required. Insofar as a response is necessary, Carnival denies the allegations.

119.   The information Carnival intercepts, or aids the Session Replay Provider in intercepting, while Plaintiffs and Class Members are using Carnival's website includes personally identifiable information and other highly specific information and communications, including, without limitation, every button, keystroke and link a user taps, whether the user has taken any screenshots, text entries (including passwords and credit card information), and how much time a user spent on the website.

**RESPONSE:**  Carnival denies the allegations in Paragraph 119.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

120.    Plaintiffs and Class members have suffered loss by reason of these violations, including but not limited to, violation of the right to privacy. Unless restrained and enjoined, Carnival will continue to commit such acts.

**RESPONSE:**  Paragraph 120 contains legal conclusions to which no response is required. Insofar as a response is necessary, Carnival denies the allegations.

121.    As a result of the above violations and pursuant to CIPA section 637.2, Carnival is liable to Plaintiffs and Class members for the greater of treble actual damages related to their loss of privacy in an amount to be determined at trial or for statutory damages in the amount of $5,000 per violation. Section 637.2 provides "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

**RESPONSE:**  Paragraph 121 contains legal conclusions to which no response is required. Insofar as a response is necessary, Carnival admits that quoted portions of Paragraph 121 appear in the referenced statute, CIPA section 637.2, but otherwise denies the allegations.

122.    Plaintiffs further request, as provided under CIPA, reasonable attorneys' fees and costs of suit, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury sufficient to prevent or deter the same or similar conduct by Carnival.

**RESPONSE:**  Paragraph 122 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that Plaintiffs are seeking reasonable attorneys' fees and costs of suit, injunctive and declaratory relief, and punitive damages in this action and denies the remaining allegations in Paragraph 122.

**COUNT IV**

**INVASION OF PRIVACY – INTRUSION UPON SECLUSION (on behalf of California Class)**

123.    Plaintiffs Price and Mikulsky incorporate the above allegations by reference as if fully set forth herein and bring this count individually and on behalf of the California Class. For the purposes of Count IV, "Plaintiffs" refer to Plaintiffs Price and Mikulsky, and "Class" refers to the California Class.

**RESPONSE:** Carnival incorporates is responses to the preceding allegations by reference as if fully set forth herein.  Carnival admits that for purposes of Count IV, "Plaintiffs" refers to Plaintiffs Price and Mikulsky, and "Class" refers to the alleged California Class.

124.   California law recognizes the tort of invasion of privacy/intrusion on seclusion.

**RESPONSE:**  Paragraph 124 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

125.   Plaintiffs and Class members have an objective, reasonable expectation of privacy in their Website Communications. In violation of this expectation, Carnival installed Session Replay Code on its website and that code was present on Plaintiffs' and the Class members' web browsers, recording their every move.

**RESPONSE:**  Paragraph 125 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

126.   Plaintiffs and Class members did not consent to, authorize, or know about Carnival's intrusion at the time it occurred. Plaintiffs and Class members never agreed that Carnival could collect or disclose their Website Communications.

**RESPONSE:**  Carnival denies the allegations in Paragraph 126.

127.   Plaintiffs and Class members had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

**RESPONSE:**  Paragraph 127 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

128.   Carnival intentionally intrudes on Plaintiffs' and Class members' private life, seclusion, or solitude, without consent, by, for all intents and purposes, installing a recording device on their web browsers.

**RESPONSE:**  Paragraph 128 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

129.   Carnival's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

**RESPONSE:**  Paragraph 129 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

130.   Plaintiffs and Class members were harmed by Carnival's wrongful conduct as Carnival's conduct has caused Plaintiffs and Class members mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications. Indeed, Carnival's conduct has needlessly harmed Plaintiffs and Class members by capturing intimately personal facts and data in the form of their Website Communications. This intrusion and disclosure of information and loss of privacy and confidentiality has caused Plaintiffs and Class members to experience mental anguish, emotional distress, worry, fear, and other harms.

**RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 130 and therefore denies them.

131.   Additionally, given the monetary value of individual personal information, Defendant deprived Plaintiffs and Class members of the economic value of their interactions with Defendant's website, without providing proper consideration for Plaintiffs' and Class members' property.

**RESPONSE:**  Carnival denies the allegations in Paragraph 131.

132.   Further, Carnival has improperly profited from its invasion of Plaintiffs' and Class members' privacy in its use of their data for its economic value and Carnival's own commercial gain.

**RESPONSE:**  Carnival denies the allegations in Paragraph 132.

133.   As a direct and proximate result of Carnival's conduct, Plaintiffs and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**RESPONSE:**  Paragraph 133 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

134.   Carnival's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiffs and Class members any time they visit Defendant's website with Session Replay Code enabled without their consent. Plaintiffs and Class members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

**RESPONSE:**  Paragraph 134 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

**COUNT V**

**VIOLATION OF MARYLAND WIRETAP ACT Md. Code Ann., Cts. & Jud. Proc. § 10-401, et seq. (on behalf of Maryland Class)**

135.   Plaintiff Hernandez incorporates paragraphs 1 through 83 as if fully set forth herein and brings this count individually and on behalf of the Maryland Class. For the purposes of Count V, "Plaintiff" refers to Plaintiff Hernandez, and "Class" refers to the Maryland Class.

**RESPONSE:**  Carnival incorporates its responses to Paragraphs 1 through 83 as if fully set forth herein.  Carnival admits that for the purposes of Count V, "Plaintiff" refers to Plaintiff Hernandez, and "Class" refers to the alleged Maryland Class.

136.   The Maryland Wiretap Act (the "Act") prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the willful disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the willful use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. Md. Code Ann., Cts. & Jud. Proc. § 10-402.

**RESPONSE:**  Paragraph 136 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

137.   Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for

each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. Md. Code Ann., Cts. & Jud. Proc. § 10-410(a).

**RESPONSE:**  Paragraph 137 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

138.   "Intercept" is defined as any "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device." Md. Code Ann., Cts. & Jud. Proc. § 10-401(10).

**RESPONSE:**  Paragraph 138 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that quoted portions of Paragraph 138 appear in the referenced statute, Md. Code Ann., Cts. & Jud. Proc. § 10-401(10).  Carnival denies all other allegations in Paragraph 138.

139.   "Contents" is defined as when "used with respect to any wire, oral, or electronic communication, includes any information concerning the identity of the parties to the communication or the existence, substance, purport, or meaning of that communication." Md. Code Ann., Cts. & Jud. Proc. § 10-401(4).

**RESPONSE:**  Paragraph 139 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that quoted portions of Paragraph 139 appear in the referenced statute, Md. Code Ann., Cts. & Jud. Proc. § 10-401(4).  Carnival denies all other allegations in Paragraph 139.

140.   "Person" is defined as, in relevant part "any individual, partnership, association, joint stock company, trust, or corporation." Md. Code Ann., Cts. & Jud. Proc. § 10-401(5)(i).

**RESPONSE:**  Paragraph 140 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that quoted portions of Paragraph 140 appear in the referenced statute, Md. Code Ann., Cts. & Jud. Proc. § 10-401.  Carnival denies all other allegations in Paragraph 140.

141.   "Electronic Communication" is defined as "any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio,

1    electromagnetic, photoelectronic, or photooptical system." Md. Code Ann., Cts. & Jud. Proc. § 10-

2    401(5)(i).

3          **RESPONSE:**  Paragraph 141 contains legal conclusions to which no response is required.

4    To the extent a response is required, Carnival admits that quoted portions of Paragraph 141

5    appear in the referenced statute, Md. Code Ann., Cts. & Jud. Proc. § 10-401(5)(i).  Carnival

6    denies all other allegations in Paragraph 141.

7          142.   Carnival is a person for purposes of the Act because it is a corporation.

8          **RESPONSE:**  Paragraph 142 contains a legal conclusion to which no response is required.

9    To the extent a response is required, Carnival denies the allegation.

10         143.   Session Replay Code like that procured by Carnival is a "device" used for the

11   "acquisition of the contents of any wire, electronic, or oral communication" within the meaning of

12   the Act.

13         **RESPONSE:**  Paragraph 143 contains a legal conclusion to which no response is required.

14   To the extent a response is required, Carnival denies the allegation.

15         144.   Plaintiff's and Class members' intercepted Website Communications constitute the

16   "contents" of electronic "communications" within the meaning of the Act.

17         **RESPONSE:**  Paragraph 144 contains a legal conclusion to which no response is required.

18   To the extent a response is required, Carnival denies the allegation.

19         145.   Carnival willfully procures and embeds Session Replay Code on its website to spy

20   on, automatically and secretly, and intercept its website visitors' electronic interactions

21   communications with Carnival in real time.

22         **RESPONSE:**  Paragraph 145 contains legal conclusions to which no response is required.

23   To the extent a response is required, Carnival denies the allegations.

24         146.   Plaintiff's and Class members' electronic communications are intercepted

25   contemporaneously with their transmission.

26         **RESPONSE:**  Carnival denies the allegations in Paragraph 146.

27         147.   Plaintiff and Class members did not consent to having their Website

28   Communications wiretapped.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1   **RESPONSE:** Carnival denies the allegations in Paragraph 146.

2   148.   Pursuant to Md. Code Ann., Cts. & Jud. Proc. § 10-410, Plaintiff and Class members

3   seek (1) actual damages, not less than liquidated damages computed at the rate of $100/day for

4   each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys'

5   fees and other litigation costs incurred.

6   **RESPONSE:** Paragraph 148 contains legal conclusions to which no response is required.

7   To the extent a response is required, Carnival denies the allegations.

8   149.   Carnival's conduct is ongoing, and it continues to unlawfully intercept the

9   communications of Plaintiff and Class members any time they visit Defendant's website with

10  Session Replay Code enabled without their consent. Plaintiff and Class members are entitled to

11  declaratory and injunctive relief to prevent future interceptions of their communications.

12  **RESPONSE:** Paragraph 149 contains legal conclusions to which no response is required.

13  To the extent a response is required, Carnival denies the allegations.

14  **COUNT VI**

15  **INVASION OF PRIVACY – INTRUSION UPON SECLUSION (on behalf of the**

16  **Maryland Class)**

17  150.   Plaintiff Hernandez incorporates paragraphs 1 through 83 and paragraphs 135

18  through 149 as if fully set forth herein and brings this count individually and on behalf of the

19  Maryland Class. For the purposes of Count VI, "Plaintiff" refers to Plaintiff Hernandez, and

20  "Class" refers to the Maryland Class.

21  **RESPONSE:**   Carnival incorporates its responses to Paragraphs 1 through 83 and

22  Paragraphs 135 through 149 as if fully set forth herein.   Carnival admits that for the

23  purposes of Count VI, "Plaintiff" refers to Plaintiff Hernandez, and "Class" refers to the

24  alleged Maryland Class.

25  151.   Maryland common law recognizes the tort of invasion of privacy.

26  **RESPONSE:** Paragraph 151 contains a legal conclusion to which no response is required.

27  To the extent a response is required, Carnival denies the allegation.

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

152.    Plaintiff and Class members have an objective, reasonable expectation of privacy in their Website Communications.

**RESPONSE:**  Paragraph 152 contains a legal conclusion to which no response is required. To the extent a response is required, Carnival denies the allegation.

153.    Plaintiff and Class members did not consent to, authorize, or know about Carnival's intrusion at the time it occurred. Plaintiff and Class members never agreed that Carnival could collect or disclose their Website Communications.

**RESPONSE:**  Carnival denies the allegations in Paragraph 153.

154.    Plaintiff and Class members had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

**RESPONSE:**  Paragraph 154 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

155.    Carnival willfully intrudes on Plaintiff's and Class members' private life, seclusion, or solitude, without consent.

**RESPONSE:**  Paragraph 155 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

156.    Carnival's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

**RESPONSE:**  Paragraph 156 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

157.    Plaintiff and Class members were harmed by Carnival's wrongful conduct as Carnival's conduct has caused Plaintiff and the Class mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

**RESPONSE:**  Paragraph 157 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

158.   Carnival's conduct has needlessly harmed Plaintiff and the Class by capturing intimately personal facts and data in the form of their Website Communications. This disclosure and loss of privacy and confidentiality has caused Plaintiff and Class members to experience mental anguish, emotional distress, worry, fear, and other harms.

**RESPONSE:**  Paragraph 158 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

159.   Additionally, given the monetary value of individual personal information, Defendant deprived Plaintiff and Class members of the economic value of their interactions with Defendant's website, without providing proper consideration for Plaintiff's and Class members' property.

**RESPONSE:**  Paragraph 159 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

160.   Further, Carnival has improperly profited from its invasion of Plaintiff's and Class members' privacy in its use of their data for its economic value.

**RESPONSE:**  Carnival denies the allegations in Paragraph 160.

161.   As a direct and proximate result of Carnival's conduct, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**RESPONSE:**  Paragraph 161 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

162.   Carnival's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and Class members any time they visit Defendant's website with Session Replay Code enabled without their consent. Plaintiff and Class members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.

**RESPONSE:**  Paragraph 162 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

## COUNT VII

### VIOLATION OF MASSACHUSETTS WIRETAP ACT

#### Mass. Gen. Laws ch. 272, §99

#### (on behalf of Massachusetts Class)

163.    Plaintiff Rubridge incorporates paragraphs 1 through 83 as if fully set forth herein and brings this count individually and on behalf of the Massachusetts Class. For the purposes of Counts VII, "Plaintiff" refers to Plaintiff Rubridge and "Class" refers to the Massachusetts Class.

**RESPONSE:**  Carnival incorporates its responses to Paragraphs 1 through 83 as if fully set forth herein.  Carnival admits that for the purposes of Count VII, "Plaintiff" refers to Plaintiff Rubridge, and "Class" refers to the alleged Massachusetts Class.

164.    Plaintiff and Class Members visited and interacted with Defendant's Websites from their personal computers and/or mobile devices while in Massachusetts.

**RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 164 and therefore denies them.

165.    Unbeknownst to Plaintiff and Class Members, Defendant procures and directs Session Replay Providers to embed Session Replay Code on Defendant's Websites to surreptitiously intercept, monitor and record nearly every interaction visitors have with their websites—including mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text submissions (both partial and complete), search queries, URLs of webpages visited, and other forms of a visitors' navigation and interaction with the websites ("Website Communications")—in real-time.

**RESPONSE:**  Carnival denies the allegations in Paragraph 165.

166.    The Massachusetts Wiretap Statute (the "Statute") prohibits (1) willfully intercepting, or procuring another to intercept, any wire or oral communication; (2) disclosing the contents of any wire or oral communication; or (3) using the contents of any wire or oral communication, knowing that the information was obtained through interception. Mass. Gen. Laws ch. 272 § 99(B)(13) & (C).

1

   **RESPONSE:** Paragraph 166 contains legal conclusions to which no response is necessary.

2

   To the extent a response is necessary, Carnival denies the allegations.

3

   167.   The express legislative purpose of Mass. Gen. Laws ch. 272, §99's unequivocal ban

4

on secret recordings is to protect Massachusetts citizens' privacy. In fact, the Statute's preamble

5

states that secret recording "pose[s] grave dangers to the privacy of all citizens of the

6

commonwealth." Mass. Gen. Laws ch. 272, §99(A).

7

   **RESPONSE:** Paragraph 167 contains legal conclusions to which no response is required.

8

   To the extent a response is required, Carnival admits that quoted portions of Paragraph 167

9

   appear in the referenced statute, Mass. Gen. Laws ch. 272, §99(A).  Carnival denies all other

10

   allegations in Paragraph 167.

11

   168.   Any aggrieved person whose oral or wire communications were intercepted,

12

disclosed, or used except as permitted or authorized by the Statute or whose personal or property

13

interests or privacy were violated by means of an interception except as permitted or authorized

14

by the Statute shall have a civil cause of action against any person who so intercepts, discloses, or

15

uses such communications or who so violates his personal, property, or privacy interest, and shall

16

be entitled to recover from any such person actual damages but not less than liquidated damages

17

computed at the rate of $100 per day for each day of violation or $1000, whichever is higher;

18

punitive damages; and a reasonable attorney's fee and other litigation disbursements reasonably

19

incurred. Mass. Gen. Laws ch. 272, §99(Q).

20

   **RESPONSE:** Paragraph 168 contains legal conclusions to which no response is necessary.

21

   To the extent a response is necessary, Carnival denies the allegations.

22

   169.   "Interception" means to "secretly hear, secretly record, or aid another to secretly

23

hear or secretly record the contents of any wire or oral communication through the use of any

24

intercepting device by any person other than a person given prior authority by all parties to such

25

communication." Mass. Gen. Laws ch. 272, §99(B)(4).

26

   **RESPONSE:** Paragraph 169 contains legal conclusions to which no response is required.

27

   To the extent a response is required, Carnival admits that quoted portions of Paragraph 169

28

1    appear in the referenced statute, Mass. Gen. Laws ch. 272, §99(B)(4).  Carnival denies all

2    other allegations in Paragraph 169.

3    170.   "Contents" when "used with respect to any wire or oral communication, means any

4    information  concerning  the  identity  of  the  parties  to  such  communication  or  the  existence,

5    contents, substance, purport, or meaning of that communication." Mass. Gen. Laws ch. 272,

6    §99(B)(5).

7    **RESPONSE:**  Paragraph 170 contains legal conclusions to which no response is required.

8    To the extent a response is required, Carnival admits that quoted portions of Paragraph 170

9    appear in the referenced statute, Mass. Gen. Laws ch. 272, §99(B)(5).  Carnival denies all

10   other allegations in Paragraph 170.

11   171.   "Intercepting device" means "any device or apparatus which is capable of

12   transmitting, receiving, amplifying, or recording a wire or oral communication other than a hearing

13   aid or similar device which is being used to correct subnormal hearing to normal and other than

14   any telephone or telegraph instrument, equipment, facility, or a component thereof, (a) furnished

15   to a subscriber or user by a communications common carrier in the ordinary course of its business

16   under its tariff and being used by the subscriber or user In the ordinary course of its business; or

17   (b) being used by a communications common carrier in the ordinary course of its business." Mass.

18   Gen. Laws ch. 272, §99(B)(3).

19   **RESPONSE:**  Paragraph 171 contains legal conclusions to which no response is required.

20   To the extent a response is required, Carnival admits that quoted portions of Paragraph 171

21   appear in the referenced statute, Mass. Gen. Laws ch. 272, §99(B)(3).  Carnival denies all

22   other allegations in Paragraph 171.

23   172.   "Wire communication" means "any communication made in whole or in part

24   through the use of facilities for the transmission of communications by the aid of wire, cable, or

25   other like connection between the point of origin and the point of reception." Mass. Gen. Laws ch.

26   272, §99(B)(1).

27   **RESPONSE:**  Paragraph 172 contains legal conclusions to which no response is required.

28   To the extent a response is required, Carnival admits that quoted portions of Paragraph 172

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1  appear in the referenced statute, Mass. Gen. Laws ch. 272, §99(B)(1).  Carnival denies all

2  other allegations in Paragraph 172.

3  173.   "Person" means "any individual, partnership, association, joint stock company,

4  trust, or corporation, whether or not any of the foregoing is an officer, agent or employee of the

5  United States, a state, or a political subdivision of a state." Mass. Gen. Laws ch. 272, §99(B)(13).

6  **RESPONSE:**  Paragraph 173 contains legal conclusions to which no response is required.

7  To the extent a response is required, Carnival admits that quoted portions of Paragraph 173

8  appear in the referenced statute, Mass. Gen. Laws ch. 272, §99(B)(13).  Carnival denies all

9  other allegations in Paragraph 173.

10  174.   "Use" includes "willfully us[ing] or attempt[ing] to use the contents of any wire or

11  oral communication, knowing that the information was obtained through interception." Mass. Gen.

12  Laws ch. 272, §99(C)(3)(b).

13  **RESPONSE:**  Paragraph 174 contains legal conclusions to which no response is required.

14  To the extent a response is required, Carnival admits that quoted portions of Paragraph 174

15  appear in the referenced statute, Mass. Gen. Laws ch. 272, §99(C)(3)(b).  Carnival denies

16  all other allegations in Paragraph 174.

17  175.   Carnival is a person for purposes of the Statute because it is a corporation.

18  **RESPONSE:**  Paragraph 175 contains a legal conclusion to which no response is required.

19  To the extent a response is required, Carnival denies the allegation.

20  176.   Session Replay Code like that procured by Carnival is an "intercepting device,"

21  within the meaning of the Statute. Mass. Gen. Laws ch. 272, §99(B)(3).

22  **RESPONSE:**  Paragraph 176 contains a legal conclusion to which no response is required.

23  To the extent a response is required, Carnival denies the allegation.

24  177.   Plaintiff's and Class members' intercepted Website Communications constitute the

25  "contents" of "electronic communication[s]" within the meaning of the Statute.

26  **RESPONSE:**  Paragraph 177 contains legal conclusions to which no response is required.

27  To the extent a response is required, Carnival denies the allegations.

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1    178.   Carnival intentionally procures and embeds Session Replay Code on its website to

2    spy on, automatically and secretly, and intercept its website visitors' electronic interactions

3    communications with Carnival in real time.

4        **RESPONSE:**  Paragraph 178 contains legal conclusions to which no response is required.

5        To the extent a response is required, Carnival denies the allegations.

6    179.   Plaintiff's and Class members' electronic communications are intercepted

7    contemporaneously, and in real-time with their transmission.

8        **RESPONSE:**  Carnival denies the allegations in Paragraph 179.

9    180.   Plaintiff and Class members did not consent to having their Website

10   Communications wiretapped.

11       **RESPONSE:**  Carnival lacks knowledge or information sufficient to form a belief about

12       the allegations in Paragraph 180 and therefore denies them.

13   181.   Carnival's conduct violated Mass. Gen. Laws ch. 272, §99 and therefore gives rise

14   to a claim under Mass. Gen. Laws ch. 272, §99(Q).

15       **RESPONSE:**  Paragraph 181 contains legal conclusions to which no response is required.

16       To the extent a response is required, Carnival denies the allegations.

17   182.   Pursuant to Mass. Gen. Laws ch. 272, §99(Q), Plaintiff and Class members seek (1)

18   actual damages, not less than liquidated damages computed at the rate of $100 per day for each

19   violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees

20   and other litigation costs incurred.

21       **RESPONSE:**  Paragraph 182 contains legal conclusions to which no response is required.

22       To the extent a response is required, Carnival denies the allegations.

23   183.   Carnival's conduct is ongoing, and it continues to unlawfully intercept the

24   communications of Plaintiff and Class members any time they visit Defendant's website with

25   Session Replay Code enabled without their consent. Plaintiff and Class members are entitled to

26   declaratory and injunctive relief to prevent future interceptions of their communications.

27       **RESPONSE:**  Paragraph 183 contains legal conclusions to which no response is required.

28       To the extent a response is required, Carnival denies the allegations.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**COUNT VIII**</u>

**INVASION OF PRIVACY**

**Mass. Gen. Laws ch. 272, §99**

**(on behalf of Massachusetts Class)**

184.    Plaintiff Rubridge incorporates paragraphs 1 through 83 and paragraphs 163 through 183 as if fully set forth herein and brings this count individually and on behalf of the Massachusetts Class. For the purposes of Count VIII, "Plaintiff" refers to Plaintiff Rubridge, and "Class" refers to the Massachusetts Class.

**<u>RESPONSE:</u>**   Carnival incorporates its responses to Paragraphs 1 through 83 and Paragraphs 163 through 183 as if fully set forth herein.  Carnival admits that for the purposes of Count VIII, "Plaintiff" refers to Plaintiff Rubridge, and "Class" refers to the alleged Massachusetts Class.

185.    Massachusetts common law recognizes the tort of invasion of privacy. The right to privacy is also embodied by statute.

**<u>RESPONSE:</u>**  Paragraph 185 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

186.    Pursuant to Mass. Gen. Laws ch. 214, §1B, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

**<u>RESPONSE:</u>**  Paragraph 186 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that quoted portions of Paragraph 186 appear in the referenced statute, Mass. Gen. Laws ch. 214, §1B.  Carnival denies all other allegations in Paragraph 186.

187.    Plaintiff and Class members have an objective, reasonable expectation of privacy in their Website Communications and moreover, that website owners like Defendant have not installed a secret recording device on their website browsers.

**<u>RESPONSE:</u>**  Paragraph 187 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

- 51 -

188.     Plaintiff and Class members did not consent to, authorize, or know about Carnival's intrusion at the time it occurred or the disclosure of information to third-party Session Replay Providers. Plaintiff and Class members never agreed that Carnival could collect or disclose their Website Communications.

**RESPONSE:**  Carnival denies the allegations in Paragraph 188.

189.     Plaintiff and Class members had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

**RESPONSE:**  Paragraph 189 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

190.     Plaintiff and the Class had a reasonable expectation of privacy in information they did not intend to share, fingerprinting between websites, and de-anonymizing them. Defendant collected all of this through its secret use of Session Replay Code.

**RESPONSE:**  Paragraph 190 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

191.     Carnival intentionally intrudes on Plaintiff's and Class members' private life, seclusion, or solitude, without consent, by, for all intents and purposes, installing a recording device on their web browsers. Defendant could have disclosed its use of Session Replay Code, but intentionally chose to hide it, and instead, secretly recorded website users via a hidden device.

**RESPONSE:**  Paragraph 191 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

192.     Carnival's conduct is highly objectionable to a reasonable person and constitutes an egregious breach of the social norms underlying the right to privacy.

**RESPONSE:**  Paragraph 192 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

193.    Plaintiff and Class members were harmed by Carnival's wrongful conduct as Carnival's conduct has caused Plaintiff and Class members mental anguish and suffering arising from their loss of privacy and confidentiality of their electronic communications.

**RESPONSE:**  Paragraph 193 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

194.    Defendant's conduct has needlessly harmed Plaintiff and the Class by capturing intimately personal facts and data in the form of their Website Communications. This disclosure, and loss of privacy and confidentiality, has caused Plaintiff and the Class to experience mental anguish, emotional distress, worry, fear, and other harms.

**RESPONSE:**  Paragraph 194 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

195.    Additionally, given the monetary value of individual personal information, Defendant deprived Plaintiff and Class Members of the economic value of their interactions with Defendant's Website, without providing proper consideration for Plaintiff's and Class Members' property.

**RESPONSE:**  Paragraph 195 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

196.    Further, Defendant has improperly profited from its invasion of Plaintiff's and Class Members' privacy by using Plaintiff's and Class Members' personal data and information for its economic value and Defendant's own commercial gain.

**RESPONSE:**  Carnival denies the allegations in Paragraph 196.

197.    Upon information and belief, Defendant derives significant benefit from the content intercepted through its procurement and use of Session Replay Code, by collecting, retaining, and using that data and information to maximize profits through predictive marketing and other targeted advertising practices.

**RESPONSE:**  Carnival denies the allegations in Paragraph 197.

198.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**RESPONSE:**  Paragraph 198 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

199.   Carnival's conduct has needlessly harmed Plaintiff and Class members by capturing intimately personal facts and data in the form of their Website Communications. This disclosure and loss of privacy and confidentiality has caused Plaintiff and Class members to experience mental anguish, emotional distress, worry, fear, and other harms.

**RESPONSE:**  Paragraph 199 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

## COUNT IX

### VIOLATION OF PENNSYLVANIA WIRETAP ACT

#### 18 Pa. Cons. Stat. § 5701 et. seq.

#### (on behalf of Pennsylvania Class)

200.   Plaintiff Oliver incorporates paragraphs 1 through 83 as if fully set forth herein and brings this count individually and on behalf of the Pennsylvania Class. For the purposes of Count IX, "Plaintiff" refers to Plaintiff Oliver, and "Class" refers to the Pennsylvania Class.

**RESPONSE:**  Carnival incorporates its responses to Paragraphs 1 through 83 as if fully set forth herein.  Carnival admits that for the purposes of Count IX, "Plaintiff" refers to Plaintiff Oliver, and "Class" refers to the alleged Pennsylvania Class.

201.   The Pennsylvania Wiretap Act (the "Act") prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. § 5703.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1        **RESPONSE:**  Paragraph 201 contains legal conclusions to which no response is required.

2        To the extent a response is required, Carnival denies the allegations.

3        202.    Any person who intercepts, discloses, or uses or procures any other person to

4 intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject

5 to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of

6 $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable

7 attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

8        **RESPONSE:**  Paragraph 202 contains legal conclusions to which no response is required.

9        To the extent a response is required, Carnival denies the allegations.

10      203.    "Intercept" is defined as any "[a]ural or other acquisition of the contents of any wire,

11 electronic or oral communication through the use of any electronic, mechanical or other device." 18

12 Pa. Cons. Stat. § 5702.

13       **RESPONSE:**  Paragraph 203 contains legal conclusions to which no response is required.

14       To the extent a response is required, Carnival admits that quoted portions of Paragraph 203

15       appear in the referenced statute, 18 Pa. Cons. Stat. § 5702.  Carnival denies all other

16       allegations in Paragraph 203.

17      204.    "Contents" is defined as "used with respect to any wire, electronic or oral

18 communication, is any information concerning the substance, purport, or meaning of that

19 communication." 18 Pa. Cons. Stat. § 5702.

20       **RESPONSE:**  Paragraph 204 contains legal conclusions to which no response is required.

21       To the extent a response is required, Carnival admits that quoted portions of Paragraph 204

22       appear in the referenced statute, 18 Pa. Cons. Stat. § 5702.  Carnival denies all other

23       allegations in Paragraph 204.

24      205.    "Person" is defined as "any individual, partnership, association, joint stock company,

25 trust or corporation." 18 Pa. Cons. Stat. § 5702.

26       **RESPONSE:**  Paragraph 205 contains legal conclusions to which no response is required.

27       To the extent a response is required, Carnival admits that quoted portions of Paragraph 205

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

appear in the referenced statute, 18 Pa. Cons. Stat. § 5702. Carnival denies all other allegations in Paragraph 205.

206.   "Electronic Communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." 18 Pa. Cons. Stat. § 5702.

**RESPONSE:**  Paragraph 206 contains legal conclusions to which no response is required. To the extent a response is required, Carnival admits that quoted portions of Paragraph 206 appear in the referenced statute, 18 Pa. Cons. Stat. § 5702. Carnival denies all other allegations in Paragraph 206.

207.   Carnival is a person for purposes of the Act because it is a corporation.

**RESPONSE:**  Paragraph 207 contains a legal conclusion to which no response is required. To the extent a response is required, Carnival denies the allegation.

208.   Session Replay Code like that procured by Carnival is a "device" used for the "acquisition of the contents of any wire, electronic, or oral communication" within the meaning of the Act.

**RESPONSE:**  Paragraph 208 contains a legal conclusion to which no response is required. To the extent a response is required, Carnival denies the allegation.

209.   Plaintiff's and Class members' intercepted Website Communications constitute the "contents" of electronic communication[s]" within the meaning of the Act.

**RESPONSE:**  Paragraph 209 contains a legal conclusion to which no response is required. To the extent a response is required, Carnival denies the allegation.

210.   Carnival intentionally procures and embeds Session Replay Code on its website to spy on, automatically and secretly, and intercept its website visitors' electronic interactions communications with Carnival in real time.

**RESPONSE:**  Paragraph 210 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

211.   Plaintiff's and Class members' electronic communications are intercepted contemporaneously with their transmission.

1    **RESPONSE:**  Paragraph 211 contains legal conclusions to which no response is required.

2         To the extent a response is required, Carnival denies the allegations.

3         212.    Plaintiff and Class members did not consent to having their Website

4    Communications wiretapped.

5         **RESPONSE:**  Carnival denies the allegation in Paragraph 212.

6         213.    Pursuant to 18 Pa. Cons. Stat. 5725(a), Plaintiff and Class members seek (1) actual

7    damages, not less than liquidated damages computed at the rate of $100/day for each violation or

8    $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other

9    litigation costs incurred.

10        **RESPONSE:**  Paragraph 213 contains legal conclusions to which no response is required.

11        To the extent a response is required, Carnival denies the allegations.

12        214.    Carnival's conduct is ongoing, and it continues to unlawfully intercept the

13   communications of Plaintiff and Class members any time they visit Defendant's website with

14   Session Replay Code enabled without their consent. Plaintiff and Class members are entitled to

15   declaratory and injunctive relief to prevent future interceptions of their communications.

16        **RESPONSE:**  Paragraph 214 contains legal conclusions to which no response is required.

17        To the extent a response is required, Carnival denies the allegations.

18                          **COUNT X**

19   **INVASION OF PRIVACY – INTRUSION UPON SECLUSION (on behalf of Pennsylvania**

20                          **Class)**

21        215.    Plaintiff Oliver incorporates paragraphs 1 through 83 and paragraphs 200 through 214

22   as if fully set forth herein and brings this count individually and on behalf of the Pennsylvania Class.

23   For the purposes of Count X, "Plaintiff" refers to Plaintiff Oliver, and "Class" refers to the

24   Pennsylvania Class.

25        **RESPONSE:**   Carnival incorporates its responses to Paragraphs 1 through 83 and

26        Paragraphs 200 through 214 as if fully set forth herein.  Carnival admits that for the purposes

27        of Count X, "Plaintiff" refers to Plaintiff Oliver, and "Class" refers to the alleged

28        Pennsylvania Class.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

216.    Pennsylvania common law recognizes the tort of invasion of privacy. The right to privacy is also embodied in multiple sections of the Pennsylvania constitution.

**RESPONSE:**  Paragraph 216 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

217.    Plaintiff and Class members have an objective, reasonable expectation of privacy in their Website Communications.

**RESPONSE:**  Paragraph 217 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

218.    Plaintiff and Class members did not consent to, authorize, or know about Carnival's intrusion at the time it occurred. Plaintiff and Class members never agreed that Carnival could collect or disclose their Website Communications.

**RESPONSE:**  Carnival denies the allegations in Paragraph 218.

219.    Plaintiff and Class members had an objective interest in precluding the dissemination and/or misuse of their information and communications and in conducting their personal activities without intrusion or interference, including the right to not have their personal information intercepted and utilized for business gain.

**RESPONSE:**  Paragraph 219 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

220.    Plaintiff and the Class had a reasonable expectation of privacy in information they did not intend to share, fingerprinting between websites, and de-anonymizing them. Defendant collected all of this through its secret use of Session Replay Code.

**RESPONSE:**  Paragraph 220 contains legal conclusions to which no response is required. To the extent a response is required, Carnival denies the allegations.

221.    Carnival intentionally intrudes on Plaintiff's and Class members' private life, seclusion, or solitude, without consent, by, for all intents and purposes, installing a recording device on their web browsers. Defendant could have disclosed its use of Session Replay Code, but intentionally chose to hide it, and instead, secretly recorded website users via a hidden device.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1   **RESPONSE:**  Paragraph 221 contains legal conclusions to which no response is required.

2   To the extent a response is required, Carnival denies the allegations.

3   222.   Carnival's conduct is highly objectionable to a reasonable person and constitutes an

4   egregious breach of the social norms underlying the right to privacy.

5   **RESPONSE:**  Paragraph 222 contains legal conclusions to which no response is required.

6   To the extent a response is required, Carnival denies the allegations.

7   223.   Plaintiff and Class members were harmed by Carnival's wrongful conduct as

8   Carnival's conduct has caused Plaintiff and the Class mental anguish and suffering arising from their

9   loss of privacy and confidentiality of their electronic communications.

10   **RESPONSE:**  Paragraph 223 contains legal conclusions to which no response is required.

11   To the extent a response is required, Carnival denies the allegations.

12   224.   Carnival's conduct has needlessly harmed Plaintiff and the Class by capturing

13   intimately personal facts and data in the form of their Website Communications. This disclosure and

14   loss of privacy and confidentiality has caused Plaintiff and the Class to experience mental anguish,

15   emotional distress, worry, fear, and other harms.

16   **RESPONSE:**  Paragraph 224 contains legal conclusions to which no response is required.

17   To the extent a response is required, Carnival denies the allegations.

18   225.   Additionally, given the monetary value of individual personal information, Defendant

19   deprived Plaintiff and Class members of the economic value of their interactions with Defendant's

20   website, without providing proper consideration for Plaintiff's and Class members' property.

21   **RESPONSE:**  Paragraph 225 contains legal conclusions to which no response is required.

22   To the extent a response is required, Carnival denies the allegations.

23   226.   Further, Carnival has improperly profited from its invasion of Plaintiff and Class

24   members' privacy in its use of their data for its economic value.

25   **RESPONSE:**  Carnival denies the allegations in Paragraph 226.

26   227.   As a direct and proximate result of Carnival's conduct, Plaintiff and Class members

27   are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to

28   be proven at trial.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1      **RESPONSE:**  Paragraph 227 contains legal conclusions to which no response is required.

2      To the extent a response is required, Carnival denies the allegations.

3      228.    Carnival's conduct is ongoing, and it continues to unlawfully intercept the

4  communications of Plaintiff and Class members any time they visit Defendant's website with Session

5  Replay Code enabled without their consent. Plaintiff and Class members are entitled to declaratory

6  and injunctive relief to prevent future interceptions of their communications.

7      **RESPONSE:**  Paragraph 228 contains legal conclusions to which no response is required.

8      To the extent a response is required, Carnival denies the allegations.

9                      **REQUEST FOR RELIEF**

10      Plaintiffs, individually and on behalf of members of the proposed Classes, respectfully

11  request that the Court enter judgment in Plaintiffs' and the Classes' favor and against Defendant as

12  follows:

13      A.      Certifying the Nationwide Class and appointing Plaintiffs as the Nationwide Class

14  representatives;

15      B.      Certifying the California Class and appointing Plaintiffs India Price and Erica

16  Mikulsky as the California Class representatives;

17      C.      Certifying the Maryland Class and appointing Marilyn Hernandez as the Maryland

18  Class representative;

19      D.      Certifying the Massachusetts Class and appointing Daniel Rubridge as the

20  Massachusetts Class representative;

21      E.      Certifying the Pennsylvania Class and appointing Ariel Oliver as the Pennsylvania

22  Class representative;

23      F.      Appointing Plaintiffs' Counsel as class counsel for the Nationwide, California,

24  Maryland, Massachusetts, and Pennsylvania Classes;

25      G.      Declaring that Defendant's past conduct was unlawful, as alleged herein;

26      H.      Declaring Defendant's ongoing conduct is unlawful, as alleged herein;

27      I.      Enjoining Defendant from continuing the unlawful practices described herein, and

28  awarding such injunctive and other equitable relief as the Court deems just and proper;

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

J.      Awarding Plaintiffs and the members of the Classes statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

K.      Awarding Plaintiffs and the members of the Classes pre-judgment and post-judgment interest;

L.      Awarding Plaintiffs and the members of the Classes reasonable attorneys' fees, costs, and expenses; and

M.      Granting such other relief as the Court deems just and proper.

**RESPONSE:**  Carnival admits that Plaintiffs seek the relief listed above.  Carnival denies that Plaintiffs are entitled to any relief, including the relief listed above.  Carnival denies any remaining allegations in the above Request for Relief section.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Classes, demand a trial by jury of any and all issues in this action so triable of right.

**RESPONSE:**  Carnival admits that Plaintiffs have demanded a trial by jury on all issues so triable.

## DEFENDANT'S AFFIRMATIVE DEFENSES

Carnival alleges the following separate and additional defenses.  By alleging these separate and additional defenses, Carnival is not in any way conceding that it bears the burden of proof or persuasion on any of these issues.  Carnival reserves the right to supplement, amend, or modify these affirmative defenses, as appropriate, based on information obtained during the course of this litigation.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The FAC, and each of its purported causes of action, fails to state facts sufficient to constitute a cause of action against Carnival.

**SECOND AFFIRMATIVE DEFENSE**

**(Conformance with Laws)**

The FAC, and each of its purported causes of action, is barred in whole or in part because Carnival conformed to all applicable laws, regulations, and industry standards.

**THIRD AFFIRMATIVE DEFENSE**

**(Preemption)**

The purported state law causes of action in the FAC are preempted in whole or in part by the Commerce Clause of the United States Constitution and other federal laws, including without limitation, the Communications Act of 1934, 47 U.S.C. § 151 *et seq.*; the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*; and the Federal Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, including any regulations promulgated thereunder.

**FOURTH AFFIRMATIVE DEFENSE**

**(Lack of Standing)**

The FAC, and each of its purported causes of action, is barred in whole or in part because Plaintiffs lack standing to assert their claims against Carnival.

**FIFTH AFFIRMATIVE DEFENSE**

**(Unjust and Excessive Statutory Damages)**

The FAC, and each of its purported causes of action, is barred in whole or in part because the damages sought against Carnival would be unjust, arbitrary, oppressive, or confiscatory in light of the nature of the alleged conduct.

**SIXTH AFFIRMATIVE DEFENSE**

**(Due Process)**

The FAC, and each of its purported causes of action, is barred in whole or in part because the damages sought against Carnival would violate its due process rights under the United States and California constitutions.

1

**SEVENTH AFFIRMATIVE DEFENSE**

2

**(Forum *Non Conveniens*)**

3

To the extent Plaintiffs entered into arbitration agreements with Princess encompassing

4

their claims, another forum exists where the case may be more conveniently heard.

5

**EIGHTH AFFIRMATIVE DEFENSE**

6

**(Void for Vagueness)**

7

The FAC, and each of its purported causes of action, is barred in whole or in part because

8

the statutes under which Plaintiffs bring claims are unconstitutionally vague.

9

**NINTH AFFIRMATIVE DEFENSE**

10

**(Rule of Lenity)**

11

Cal. Penal Code § 630 *et seq.* is ambiguous.  Because Cal. Penal Code § 630 *et seq.* are

12

penal statutes, the rule of lenity requires that any ambiguity be resolved in favor of Carnival.

13

**TENTH AFFIRMATIVE DEFENSE**

14

**(Waiver/Consent/Release)**

15

The FAC, and each of its purported causes of action, is barred in whole or in part by waiver,

16

consent, and/or release, including, but not only, because Plaintiffs agreed to the release of claims

17

and limitation of liability clauses in Carnival's terms and conditions, and were aware of Carnival's

18

disclosures regarding collection of information related to customer's interactions with Carnival's

19

website.

20

**ELEVENTH AFFIRMATIVE DEFENSE**

21

**(Knowledge)**

22

The FAC, and each of its purported causes of action, is barred in whole or in part because

23

Plaintiffs had prior knowledge of any alleged recording, intercepting, monitoring, analysis, or use

24

of their interactions with Carnival's website.

25

26

27

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1

## TWELFTH AFFIRMATIVE DEFENSE

2

### (Failure to Mitigate)

3

The FAC, and each of its purported causes of action, is barred in whole or in part because

4

Plaintiffs failed to mitigate any damages allegedly suffered as a result of Carnival's acts or

5

omissions regarding its website.

6

## THIRTEENTH AFFIRMATIVE DEFENSE

7

### (Good Faith)

8

The FAC, and each of its purported causes of action, is barred in whole or in part because

9

Carnival's alleged acts or omissions regarding its website were in good faith, in the exercise of

10

reasonable business judgment, for good cause, and for legitimate business purposes and/or

11

necessity.

12

## FOURTEENTH AFFIRMATIVE DEFENSE

13

### (Justified and/or Privileged Conduct)

14

The FAC, and each of its purported causes of action, is barred in whole or in part because

15

Carnival's alleged conduct was reasonable, justified, and/or privileged and cannot give rise to any

16

liability.

17

## FIFTEENTH AFFIRMATIVE DEFENSE

18

### (Estoppel)

19

The FAC, and each of its purported causes of action, is barred in whole or in part by the

20

doctrine of estoppel.

21

## SIXTEENTH AFFIRMATIVE DEFENSE

22

### (Laches)

23

The FAC, and each of its purported causes of action, is barred in whole or in part by the

24

doctrine of laches.

25

## SEVENTEENTH AFFIRMATIVE DEFENSE

26

### (Unjust Enrichment)

27

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

The FAC, and each of its purported causes of action, is barred in whole or in part because Plaintiffs would be unjustly enriched if permitted to recover on the FAC.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Failure to Join Necessary or Indispensable Party)

The FAC, and each of its purported causes of action, is barred in whole or in part because Plaintiffs failed to join a necessary or indispensable party.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Causation)

The FAC, and each of its purported causes of action, is barred in whole or in part because Plaintiffs' alleged harm was caused by their own actions, third parties, or factors outside Carnival's control for which Carnival is not responsible.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Class Action Improper)

Carnival alleges that this suit may not be properly maintained as a class action because: (1) Plaintiffs have failed to plead, and cannot establish the necessary procedural elements for class treatment; (2) a class action is not an appropriate method for the fair and efficient adjudication of the claims described in the FAC; (3) common issues of fact or law do not predominate—to the contrary, individual issues predominate; (4) Plaintiffs' claims are not representative or typical of the claims of the putative class; (5) Plaintiffs are not proper class representatives; (6) the named Plaintiffs and putative class counsel are not adequate representatives for the alleged putative class; (7) Plaintiffs cannot satisfy any of the requirements for class action treatment, and class action treatment is neither appropriate nor constitutional; (8) there is not a well-defined community of interest in the questions of law or fact affecting Plaintiffs and the members of the alleged putative class; and (9) the alleged putative class is not ascertainable, nor are its members identifiable.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Class Action Waiver)

Carnival alleges that this suit may not be properly maintained as a class action to the extent that Plaintiffs have entered into agreements with Carnival containing class action waivers.

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236

1

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

2

**(Affirmative Defenses Against Class Members)**

3

If the Court certifies a class in this action, then Carnival asserts the affirmative defenses set

4

forth herein against each and every member of the certified class.

5

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

6

**(Reservation of Rights)**

7

Carnival expressly reserves the right to raise additional affirmative defenses at trial as facts

8

supporting any such defenses may become known to it during the course of this litigation.

9

Dated: March 22, 2024                                  Respectfully Submitted,

10

11

**ORRICK, HERRINGTON &
SUTCLIFFE LLP**

12

13

*/s/ Jacob Heath*
Jacob Heath (STATE BAR NO. 238959)

14

jheath@orrick.com
The Orrick Building

15

405 Howard Street
San Francisco, CA 94105-2669

16

Telephone: +1 415 773 5700

17

Facsimile: +1 415 773 5759

18

*Counsel for Defendant*

19

20

21

22

23

24

25

26

27

28

DEFENDANT CARNIVAL
CORPORATION'S ANSWER
3:23-cv-00236